# Parks et al. *versus* Boynton.

1. Where, in an action of ejectment, there can be no room for doubt as to what has been actually tried and found by the jury, the court may, by virtue of the provisions of the Act of March 14th 1872, § 1, Pamph. L. 25, permit the description of the tract in question filed by the plaintiff to be so amended as to conform to the verdict.

2. The said section of the above Act, as thus applied, does not infringe the right of trial by jury, and is not, therefore, unconstitutional.

3. Where, in endeavoring to fix the location of a tract of land, marks are actually found upon the ground indicating the corners of an adjacent and earlier survey, which corners are called for in the survey of the tract in question, such marks will be held of equal importance in determining the true location of the tract with other marks found upon the ground which were made on the survey of the tract itself.

4. Where several tracts of land are surveyed together in one block, but the interior lines of division are not run, the presumption is only prima facie that such interior lines were intended to be parallel to the lines bounding the entire block. Such presumption may be overcome by the existence of landmarks indicating that the contrary is the case.

5. In ascertaining the location of a tract of land, actual marks on the ground will control courses, calls and distances called for by the survey.

6. Where several tracts are surveyed in one block, but the lines of division are not run between them, and subsequently the block is found to contain more land than the aggregate amount called for by the surveys of the tracts within it, the proper course is to divide the surplus proportionably among the several tracts.

[Parks *v.* Boynton.]

7. Three tracts of land, A, B and C, were laid out in a block, but the lines of division were not run between them. All three tracts had a common western boundary, the northern and southern ends of which were clearly marked on the ground. The total length of the common western boundary exceeded the aggregate length of the western lines of the tracts as called for in the survey. Tracts A and B had also a common eastern boundary, the northern and southern ends of which called for corners on an adjacent tract, which corners were also found marked on the ground. The common eastern boundary line of tracts A and B was greater than the aggregate length of the western lines of those tracts as called for in the survey. *Held,* that in order to fix the division line between tracts A and B, the proper course was to divide proportionably between all three tracts the surplus on the western line, and to do the same on the eastern line as between tracts A and B, and then to run a line from west to east between the points thus ascertained on the east and west respectively, to be the points of division between the tracts.

June 15th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Clearfield county:* Of May Term 1881, No. 78.

This was an action of ejectment brought July 24th 1877, by Jonathan Boynton against Thomas Parks and the Clearfield Fire Brick Company for a tract of land containing about ten acres, represented by the shaded strip on the plan on next page.

On the trial before MAYER, P. J., the following facts appeared: The Charles Stewart, John Vaughn and William Lewis tracts were surveyed as one block on June 17th 1793. Its northern, southern and western boundaries were established by the corners and lines of older surveys of 1792, the location of which is undisputed. The Stewart, Vaughn and Lewis tracts called for each other, but their interior division lines were not run or marked on the ground. The total official distance of the three surveys along the western line is 625 perches. The distance by actual measurement is 637½ perches, thus leaving a surplus of 12½ perches. The eastern boundary of the John Vaughn and William Lewis was, in part, the Jane Campbell, surveyed in 1785, as shown in the plan, the location of which is not disputed. The Vaughn called for the northwest corner of the Campbell, and the Lewis called for its southwest corner, and both called for a portion of its west line. The official distance of the west line of the Campbell is 222 perches; the distance by actual measurement is 233.7 perches.

The plaintiff showed title to a tract of land, being the southwestern part of the John Vaughn tract, "Beginning at a post on the southwest corner of the [John Vaughn] tract and the northwest corner of survey in the name of William Lewis, thence along the dividing line of the William Lewis and John

[Parks *v.* Boynton.]

Vaughn  surveys  195  perches  to  a  post,  thence  along  and  by
Jane  Campbell  survey  north," &c.

The  defendants  showed  title  to  a  tract,  being  the  north-
western  part  of  the  William  Lewis  tract,  adjoining  the  John
Vaughn  survey  on  the  north.    The  defendants  and  their  prede-
cessors  in  title,  had  occupied,  cut  timber,  and  removed  fire  clay
from  the  strip  in  question  for  a  long  time  prior  to  the  bringing
of  this  action.

The  plaintiff  claimed,  that  in  the  absence  of  any  marks  on
the  ground  showing  that  the  interior  division  line  had  been  run
between  the  John  Vaughn  and  the  William  Lewis  at  the  time
of  the  survey,  and  in  the  absence  of  evidence  of  an  agreement
between  the  owners  of  said  two  adjoining  tracts  fixing  the  divi-
sion  line,  the  surplus  of  $12\frac{1}{2}$  perches,  in  excess  of  the  official  call
for  the  western  line  of  the  Stewart,  Vaughn  and  Lewis  block,
should  be  apportioned  equally  between  the  three  tracts ;  whereby
the  division  line  between  the  Vaughn  and  Lewis  tracts  would
be  the  southern  line  of  the  tract  in  dispute  (marked  in  plan  b b).
The  plaintiff  further  claimed  that  it  was  within  the  province  of
the  court  to  determine  the  location  of  the  said  division  line,  by
apportioning  the  said  surplus  equally  between  the  said  tracts.

The  defendant  Parks  showed  that  he  entered  into  possession
of  his  tract  in  1846 ;  that  in  1849,  he  caused  a  survey  to  be
made  by  one  Cuttle,  who  ran  the  division  line  between  the
Vaughn  and  Lewis  tracts  along  the  northern  line  of  the  tract
now  in  dispute  (being  the  line  marked  on  the  plan  a a).    This
line  was  marked  on  the  ground,  and  its  location  is  undisputed.
While  there  was  no  evidence  to  show  that  the  then  owners  of
the  Vaughn  tract  knew  of  the  running  of  this  line  in  1849,  yet
the  defendant  proved  that  he  and  his  assignees  of  timber  rights
thereafter  cut  timber  up  to  that  line  and  used  the  land  as
farmers  usually  use  their  woodland,  for  fire-wood  and  fencing,
without  molestation  or  complaint  from  the  then  owners  of  the
adjoining  part  of  the  Vaughn  survey,  nor  until  the  plaintiff
derived  title  by  a  sheriff's  sale  in  1876.    The  defendants  con-
tended  that  by  such  acquiescence,  the  line  of  1849  became  es-
tablished  as  a  "consentable  line,"  although  the  predecessors  in
title  of  the  plaintiff  did  not  directly  join  in  making  it.

It  further  appeared  in  evidence,  that  if  the  southwestern
corner  of  the  Jane  Campbell  tract  were  adopted  as  the  starting
point,  from  which  to  locate  a  division  line  between  the  Vaughn
and  Lewis,  that  line  would  be  where  the  plaintiff  claimed,  viz.,
the  southern  line  of  the  tract  in  dispute ;  but  that  if  the  north-
western  corner  of  the  Jane  Campbell  tract  be  taken  as  the
starting  point,  the  division  line  between  the  Vaughn  and  Lewis

[Parks *v.* Boynton.]

would be located north of the line of 1849, which the defendants claimed.

The court, at the request of plaintiff's counsel, instructed the jury that there was no sufficient evidence to establish a consentable division line, and that the verdict must be for the plaintiff. Verdict accordingly for the plaintiff.

The plaintiff subsequently took a rule to show cause why an amended description of the tract in controversy should not be filed, which rule the court, after argument, made absolute, saying, in an order filed: "It appearing to the court that this amended description conforms to what was tried by the jury and found by the verdict, this amendment is, therefore, allowed and ordered to be filed."

Judgment having been entered on the verdict the defendants took this writ of error, assigning for error, inter alia, the action of the court in directing a verdict for the plaintiff and in allowing the amendment of the description after verdict.

*Krebs* (with whom was *Wallace*), for the plaintiffs in error. —There was ample evidence of the disputed question of fact as to the location of the division line; but instead of submitting it to the jury, the court directed a verdict for the plaintiff, on the theory that it was within the province of the court to apportion the surplus arising from the discrepancy between the official distance and the actual distance, equally between the three tracts of the block. This was manifest error. The line of 1849 was openly made and visibly marked and recognized as the division line by the owners of both tracts. Whether the acts of the parties were such as to constitute it a consentable line was a question for the jury. The court, however, not only assumed to decide this question of fact, but disregarded all the evidence of location furnished by the established corners of the Jane Campbell survey on the east.

The court also erred in permitting the amended description to be filed, five months after the verdict. The case was tried on a descriptive claim which was so vague that the sheriff could not have enforced a writ of habere facias possessionem. The amendment was allowed by virtue of the Act of March 14th 1872, Pamph. L. 25; but we contend that this act does not apply where the court direct a verdict and no issue of fact was settled by the jury. If it does apply to such a case, the act is unconstitutional. Otherwise, where the disputed fact is the true location of a boundary line, the court may assume a particular location and instruct a verdict establishing it, then permit an amendment, changing the description to conform to the assumed location, and enter judgment on the verdict; whereby the de-

fendant would be choused out of his land without a trial by jury of his title to the land as covered by the amended description.

*McEnally* (*McCurdy* with him), for the defendant in error. —The mere fact that one party causes an alleged division line to be run by a surveyor without the knowledge of the owner of the adjoining tract, and afterwards commits trespasses up to that line, is not sufficient to take a case to a jury on the question of a consentable line: Adamson *v.* Potts, 4 Barr 234. To establish a consentable line, it is essential to show that both parties, knowing their respective rights or claims, by acts in relation thereto, show that they mutually adopt a line as a division.

As to the question of location.—The exterior lines of the block are fixed. The interior lines were described but not marked on the original survey. In such case, in the absence of evidence of a consentable line sufficient to sustain a verdict, the interior lines are to be fixed by legal principles, and judgment will not be reversed, because the judge declared the true effect of the evidence, instead of submitting it to the jury: Eister *v.* Paul, 4 P. F. S. 196; McCracken *v.* Roberts, 7 Harris 390; Mathews *v.* Hegarty, 1 Wr. 64; Hagerty *v.* Mathers, 7 Casey 348. The amendment of the description after verdict came within the purview of the Act of 1872, the object of which was to prevent the failure of justice through technical defects after a fair trial on the merits.

Mr. Justice Trunkey delivered the opinion of the court June 22d 1881.

It would be scarcely possible that evidence could more clearly show the location of the land which the plaintiff claimed to recover. The line of 1849 is marked on the ground, both parties proved it and concede that it is the north boundary of the land in controversy, which is a strip about eight perches wide and one hundred perches long, bounded on the south by the original line of the John Vaughn survey, as described in the præcipe. In the amended description said line of 1849 is the north boundary, the south is called the original line of the Vaughn survey, and the strip is seven and three-tenths perches wide and ninety-four and four-tenths perches long. This amendment was directed under the Act of March 14th 1872, a salutary law that enables the court to make the record conform to what was tried before the jury and found by the verdict. Where, as in this case, there is no room for doubt as to what was tried and found, it is the duty of the court to allow the filing of an amended description if one be needed. The ingenious argu-

ment of the plaintiffs in error failed to convince us that such amendment infringes the right of trial by jury, or that the act is unconstitutional.

A division line between the Vaughn and Lewis tracts was not marked at the time of the original survey. The west line of these tracts, extended, is also the west line of the Stewart tract, the three in same block, and the location of the southwest corner of the Lewis and northwest corner of the Stewart being known, controls the intermediate corners of the tracts on that line. By the official survey the west line of the Stewart tract is two hundred and twenty perches, of the Vaughn, two hundred and fifteen perches, and of the Lewis, one hundred and ninety perches. The actual distance is greater, which, proportionally distributed, locates the northwest corner of the Lewis tract one hundred and ninety-three and four-tenths perches from the known southwest corner. Taking this fact as true, the court directed a verdict for the plaintiff, evidently treating the aforesaid corners as the sole basis for the line of division.

On the east of these tracts were lands surveyed in 1785, and the east boundary from the southeast corner of the Lewis tract to the northeast corner of the Stewart, is by no means a direct line. The Jane Campbell tract is bounded north, south and west by parts of the Vaughn and Lewis tracts, the west line of these tracts being only one hundred and eight-five and four-tenths perches from the west line of the Jane Campbell. The southwest corner of the Jane Campbell tract is a black oak, and the northwest corner a white oak, and the said black oak is a corner in the official survey of the Lewis tract, and the white oak a corner in the same survey of the Vaughn. These are as well defined as any other landmarks in the Lewis and Vaughn surveys, and have no less power because they are also the marks of an older survey. The official distance between these corners is, along the Lewis tract one hundred and twenty-seven perches, and along the Vaughn tract ninety-five perches, but the actual distance is greater, and should be apportioned by the same rule as was applied in fixing the division corners on the west line of the tracts. The same witness who testified on behalf of plaintiff fixing the line to which he recovered, also said that if the line were determined by the Jane Campbell corner, Parks would go further north—north of the line to which he claims. It is contended by the defendants, that if the line surveyed and marked in 1849 be set aside, the division line should be settled by said corners of the Jane Campbell tract. Why part of the ascertained landmarks should be cast aside so as to favor the owner of either the Vaughn or Lewis tract, is not explained by either party. No rule imperatively requires that the division

[Stewart's Appeal.]

line shall be parallel with the northern or southern tract line, and though it would be so presumed in absence of landmarks, these marks will control. If the ascertained corners on the west serve to locate the point of division on that line, so will those on the east locate the point on the east line, and the division will be by a direct line between these points, whatever its course. This was decided in Watson *v.* Jones, 4 Nor. 117, where it is shown that all the ascertained marks on the ground are to be considered, remembering the rule that where these are found, courses, calls and distances must give way.

If any question of fact depending upon oral testimony be in dispute it must be submitted to the jury. If there be dispute as to the location of any corner or corners, and consequently of where the division line should be, the jury shall decide it, unless the parties agree to submit the fact to the court or a referee. The first assignment is sustained. We are of opinion that there is no error in the rulings set forth in the remaining assignments.

Judgment reversed, and venire facias de novo awarded.