# Roth's Estate.  Ebert's Appeal.

[Marked to be reported.]

*Guardian's accounts—Settlement out of court—Release.*

It is the settled rule in this state that the orphans' court will always scrutinize a settlement made by a guardian with his ward shortly after the latter arrives at age and when no account of the trust is filed. In such case, the burden of proof is on the guardian to show that the settlement was a fair one, and that no fraud was practiced upon his ward.

Where the estate is large, and the accounts complicated, especially if the settlement is made in the absence of a relation or business friend of the ward, a stricter rule should prevail than where the estate is trifling, consisting of only a few hundred dollars, and the account correspondingly brief.

In the latter class of cases a guardian may well avoid filing an account in order to save the expense to his ward, and the latter should not be allowed to disturb the settlement after the execution of a release and the death of his guardian, unless for clear mistake or fraud.

*Liability of guardian—Voluntary gifts for ward—Revocation.*

A ward's step-father (a person as to whom there was evidence that he was of intemperate habits and limited means) gave a sum of money to the guardian for the benefit of the ward, and within a few days thereafter made a demand for its return, which was, in good faith, acceded to by the guardian. *Held*, that the right of the guardian to retain the money under such circumstances was too uncertain to justify a surcharge after a lapse of nineteen years and the death of the guardian.

The evidence would justify the court in holding the gift to be improvident; and, being without consideration and voluntary, the donor had a right to revoke it.

*Competency of witnesses—Surviving party—Rebuttal—Act, 1891.*

Under the Act of June 11, 1891, P. L. 287, a surviving party cannot be called unless the living witness to the transaction between himself and the deceased has already testified. His competency is to be determined by the condition of things at the time he is called, and he is not rendered competent by the fact that the other side subsequently calls the living witness.

*Costs of audit, etc., on proceedings to surcharge.*

Where the evidence showed that a guardian's settlement with his ward was made in the presence of a witness and with the books and papers of the guardian before them, and there was no evidence that any information was withheld from the ward, and the ward signed a release, the costs of unsuccessful proceedings to surcharge the guardian were placed on the ward.

Argued May 19, 1892. Appeal, No. 48, July T., 1892, by Ebert et al., administrators of Ebert, deceased guardian of Roth, from decree of O. C. York Co., dismissing exceptions to auditor's report adjudicating guardian's account. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Roth, the ward, filed a petition alleging a failure on the part of his guardian to file an account and pay over all moneys due, praying for a citation. An answer filed by the guardian's administrators, appellants, set up a release signed by the ward. A replication asserted that the release was not binding because signed without knowledge of the particular errors which were specified as a gift of $266.67 by the ward's step-father to the guardian for the ward, not included in the account; and $100 charged twice against the ward. After depositions, including those of the ward, the court ordered an account to be filed, in an opinion, to the following effect, by BITTENGER, J.:

The ward is competent to testify to the discovery of the receipt for the $266.67 after the death of the guardian : Porter v. Nelson, 121 Pa. 628, and cases cited. He is also competent as to what occurred at the settlement, in the presence of Moore who was called as a witness against him : Act of June 11, 1891, P. L. 287.

This gift was an executed trust: 1 Lewin, Trusts, p. 111 ; 1 Perry, Trusts, p. 104 ; Ritter's Ap., 59 Pa. 9 ; Rick's Ap., 105 Pa. 536 ; Dennison v. Goehring, 7 Pa. 179 ; Fellow's Ap., 93 Pa. 470.

" The cases of Russell's Appeal, 75 Pa. 281 ; Miskey's Appeal, 107 Pa. 611 ; Rick's Appeal, 105 Pa. 536, and Bristor v. Tasker, 135 Pa. 110, cited by counsel for the respondents, are cases in which no present interest was passed to others; and there the gift or grant was held to be revocable ; in several of them, for the additional reason that they are proved to have been created through fraud, misrepresentation, or undue influence—mistakes of law and fact. In Rick's Appeal, Paxson, J., in delivering the opinion of the court says : ' The later decisions carefully distinguish the cases when a present beneficial interest is given to a third person. Thus in Ritter's Appeal, 59 Pa. 9, Frederick's Appeal was held not to apply, for the rea-

son that a present interest was vested in the wife. The same distinction was observed in Fellow's Appeal, 12 Norris, 470.'

" Agnew, C. J., in Russell's Appeal, 75 Pa. 288, in the opinion, says : 'That the law of the land permits any one to dispose of his property, gratuitously, if he pleases, when not prejudicial to the interest of creditors, and that his voluntary gifts made with full intention and knowledge of the act are irrevocable, in equity as well as in law, when the power to revoke is not reserved, may be conceded.'

" The remaining case bearing on this point, cited by the counsel for the respondents, Lyon v. Marclay, 1 W. 271, is a case in which an assignment was made by a mother, to her father, of a bond and judgment, to be held in trust for the illegitimate child of the donor, and it was held that this was a revocable gift: first, because it was only security for money not collected at the time of the gift: and, second, because the father of donor was only the natural, and not the legal guardian of the child, and that no present interest vested in *cestui que trust*. The court uses the following language on page 277 : 'As I understand the law the natural guardian had no power to receive the minor's money ; nor can he release any claim the minor may have. If T. Lyon did receive any money for her, no doubt he would be considered as holding in trust.' The court then, in halting, uncertain terms, proceeds to hold the gift revocable. We have been unable to find any case following the last mentioned case, in the many years which have intervened. It does not rule this case. It is inapplicable, in this proceeding, to justify the re-payment to John Upman, the donor, of the money he added to the trust fund of his stepson, in the hands of the guardian. When the money was once in the hands of the legal guardian, as part of the trust fund, it was an executed, complete trust which could not, while the ward was a minor, be revoked."

The court held that the settlement and release was no bar to an account, citing Hawkins's Ap., 32 Pa. 263 ; Stanley's Ap., 8 Pa. 433 ; Lukens's Ap., 7 W. & S. 48 ; Will's Ap., 22 Pa. 325, 332 ; Eberts v. Eberts, 55 Pa. 110, 119, and Lewis v. Browning, 111 Pa. 493, 504.

An account was filed by the guardian's administrators and exceptions filed by the ward to the items above mentioned.

George E. Neff was appointed auditor and found the following facts, *inter alia:*

" The evidence fails to show that John Upman was not responsible for his actions when he gave the money, to wit, $266.67 to George D. Ebert; but, on the contrary, Mr. Upman knew what he was doing at the time." [4]

The auditor also held that " when this money was once in the hands of the legal guardian as part of the trust fund, it was an executed complete trust, which could not, while the ward was a minor, be revoked." [5]

The auditor also found that the ward did not know, at the time of the settlement, that this money had been received or returned. [3]

Exceptions to the auditor's reports alleged that the auditor erred (1) in adjudicating upon any matters not specified in the petition for an account; (2) in not rejecting the ward's testimony as to matters occurring in the guardian's lifetime; (3–5) in finding as above; (6) in holding that the $266.67 was a part of the trust fund; (7) in surcharging the guardian with that sum and interest; (8) in surcharging the guardian with the $100 and interest; (9) in disallowing guardian's commissions; (10) in imposing costs of audit on guardian; (11) in not finding laches; (12) and estoppel by release; (13) and by receipt of money; and (14) in not holding that the presumption from delay was that the ward had no cause of complaint.

The court dismissed the exceptions and confirmed the report, citing, as to the effect of the finding covered by the fourth exception, Harman & Hassert's Ap., 23 W. N. 550.

*Errors assigned* were (1–14) dismissal of exceptions, quoting them; and (15) confirmance of report.

*E. W. Spangler,* for appellant.—The ward would have been competent, under the Act of 1891, only in rebuttal: Karch v. Karch, 1 Dist. R. 16, opinion by McPherson, J., who drew the Act. The word " or " in the clause " in the presence or hearing " must be construed " and : " Murray v. Keyes, 35 Pa. 384; Doebler's Ap., 64 Pa. 14. Therefore the ward could have rebutted only what the other witness testified he heard.

What are reported by the auditor as facts are simply deduc-

tions from other facts.    They do not bind this court: Phillips's
Ap., 68 Pa. 130; Cake's Ap., 110 Pa. 65; Gaines v. Brocker-
hoff, 136 Pa. 175.

The guardian, to save expenses, did not file an account.    The
ward is estopped from denying expenses incurred only at his
instance.    Even where there is an agreement not to charge com-
missioners they are allowable: Williams's Ap., 119 Pa. 87.

The settlement between guardian and ward was full, fair
and honest, and the ward is estopped from now calling it in
question: Lewis v. Browning, 111 Pa. 504, Stryker's Est., 17
W. N. 13; Hawkins's Ap., 32 Pa. 263; Marr's Ap., 78 Pa. 66.
Reasonable vigilance and good faith is the standard of duty:
Fahnestock's Ap., 104 Pa. 46; Eyster's Ap., 16 Pa. 376.

If the ward's step-father was irresponsible through drink,
the gift was revocable: Miskey's Ap., 107 Pa. 612.    But even
if he were not irresponsible, the guardian cannot be surcharged
for returning it.    The step-father was under no obligation to
pay: Brown's Ap., 112 Pa. 18; and the guardian under no
legal obligation to receive; and the payment was therefore purely
voluntary: Scott v. Dickson, 108 Pa. 15; and, being to a vol-
unteer, was revocable by the donor: Russell's Ap., 75 Pa. 270;
Rick's Ap., 105 Pa. 528; and was fraudulent as to creditors:
Dickerson's Ap., 115 Pa. 210; Coates v. Gerlach, 44 Pa. 43;
see, also, especially Lyon v. Marclay, 1 Watts, 271; Perry,
Trusts, § 104, note, p. 102.

The money being no part of the ward's inheritance, and it
having been paid back in 1873, the statute of limitations bars a
recovery.    Recovery by the ward is barred by his laches:
Cress' Case, 2 Wh. 494; Stryker's Est., 17 W. N. 13.

Even if a recovery could in any event be had on account of
a mistake by the guardian, no interest could be recovered:
Lewin, Trusts, § 349.


*N. M. Wanner*, for appellee.—The opinion of the court below
is referred to for our argument.

It is not pretended that the step-father was, at or about the
time of the alleged payment or re-payment of the moneys in
question, under the influence of liquor or unable to manage
his own business.

The ward's testimony as to what occurred after the guardian's

death was certainly competent. This includes the finding of the receipt and the discovery of the other error, disclosed by the guardian's own books. Indeed, the ward's case is made out without his own testimony.

The ward is not estopped by laches. The estate is still unsettled. No one has been put to loss or disadvantage and there is no change in the status of the estate of the guardian.

OPINION BY MR. CHIEF JUSTICE PAXSON, July 13, 1892.

It is the settled rule in this state that the orphans' court will always scrutinize a settlement made by a guardian with his ward shortly after the latter arrives at age, and where no account of the trust is filed with the register. In such cases the burden of proof is on the guardian to show that the settlement was a fair one, and that no fraud was practiced upon his ward. The rule upon this subject was fairly stated in Luken's Appeal, 7 W. & S. 48, where it was said by Kennedy, J. : " The ward, under the express provision of the Act of Assembly, has a right to require that such settlement shall be made by the guardian before the court ; but if he chooses after his arrival at full age to make a settlement with his guardian without the intervention of the court, and, after having received the amount agreed to be coming to him, to give an acquittance or release, to the guardian, he ought not to trouble the court, or his guardian either, afterwards, without pointing out some mistake or other error in the settlement, or showing that a fraud has been practiced on him by his guardian whereby he has been prejudiced."

We may add in addition to this that much depends upon the circumstances of the case. Where the estate is large, and the accounts complicated, especially if the settlement is made in the absence of a relative or a business friend of the ward, a stricter rule should prevail than where the estate is trifling, consisting of only a few hundred dollars, and the account correspondingly brief. In the latter class of cases a guardian may well avoid filing an account in order to save the expense to his ward, and the latter should not be allowed to disturb that settlement, especially after the death of his guardian, unless for clear mistake or fraud.

In the case in hand, the ward became of age on the 28th

day of September, 1887. Between that day and the 1st day of January following, there was a settlement between the ward and George D. Ebert, his guardian. The settlement took place at the office of W. W. Moore, a justice of the peace, and in his presence. They went over the accounts of the guardian as ·contained in his books, and found a balance due the ward of $445.61, which was subsequently paid to him. On the 20th day of February, 1888, he executed and delivered to his said guardian a release for the balance due upon said settlement, expressed to be, "in full satisfaction and payment of my share of the estate, real and personal, of my late father, Adam Roth, deceased." This release was recorded in the recorder's office in York county. On the 14th day of July, 1888, George D. Ebert, the guardian, died. On the 15th day of September, ·1890, the ward presented his petition in the orphans' court, praying for a citation upon the administrators of the deceased guardian to file his account as such guardian. Upon this proceeding the court below ordered an account to be filed, which was referred to an auditor, and resulted in a surcharge of a considerable sum, besides the costs of the audit.

The testimony of the ward himself shows that he was entirely satisfied with the settlement until he discovered, shortly after the death of his guardian, that the latter had received the sum of $266.67 which was not included in the account and settlement. This money was received by the guardian under the following circumstances: It appears that on the 15th day of April, 1873, John Upman, the step-father of the ward, paid this sum to the guardian, for which he received the following receipt:

"Received, April 15th, 1873, of John Upman, two hundred and sixty-six dollars and sixty-seven cents. To be applied to the fund of William Roth, a minor child of Adam Roth.

"$266.67                                    George D. Ebert."

It further appeared that on April 21, 1873, the guardian returned this money to Mr. Upman, and took his receipt therefor. The circumstances under which the money was paid to the guardian, and by him returned to Mr. Upman, do not very clearly appear. Both are deceased, and we have little but what appears upon the face of the respective receipts. There is satisfactory evidence, however, that Mr. Upman was an intemperate man, and that, if not insolvent, he left no property

when he died.    The payment to the guardian was entirely voluntary, and under the circumstances we may fairly assume that it was improvident.    It was moreover no part of the estate of the ward.    Upman needed the money to pay a note in less than a week after he handed it to the guardian, and demanded it back and received it.    There was a reference to this pay-. ment on the books of the guardian, but the amount was not carried out, and it appears to have been erased.    The auditor and the court below surcharged the guardian with the amount of this money with interest thereon from April, 1873, upon the ground that it was an executed trust, and the guardian had no right to return the money.

When we reflect that this money never had formed any portion of the ward's estate, and that the guardian had returned it to Upman in entire good faith within a few days after he had received it, it seems a harsh proceeding on the part of the ward, after the lapse of nineteen years, and after the lips of his guardian are sealed in death, to seek to hold him responsible for this money with its accumulated interest.

The right of the guardian to retain it is too uncertain to justify us in surcharging his estate with it after this lapse of time.    Considering the evidence as to his habits, and his lack of means, we are justified in holding it to be an improvident gift which he had a right to revoke.    It was without consideration, and, the payment a mere voluntary one; and, being to a volunteer, it was revocable by the donor: Russell's Appeal, 75 Pa. 270; and is void, the gift being improvident: Rick's Appeal, 105 Pa. 528; and where creditors are involved, it is fraudulent as to them.    In Miskey's Appeal, 107 Pa. 612, a man of intemperate habits, by which he had become enfeebled in mind and body, made a conveyance of all his estate to his father in trust for his (the grantor's) father, mother and sister.    The deed contained no power of revocation, yet it was set aside by this court.    We need not pursue this branch of the case further.

The court also charged the appellants with the sum of one hundred dollars upon the ground that it was a duplicate charge. The only evidence to support this surcharge was the testimony of the ward himself, who was permitted to testify against the objection of the appellants.    The admission of the ward as a witness forms the subject of the second specification of error. The learned judge below held that he was a competent witness

under the Act of June 11, 1891, P. L. 287, for the reason that
the witness, W. W. Moore, who was present at the settlement
between the guardian and his ward, had been called and testi-
fied on behalf of the estate.   Just here the learned judge below
fell into error.   Moore had not been called as a witness when
William H. Roth, the appellee, was placed upon the stand.
His competency as a witness must be determined by the con-
dition of things at the time he was called.   The fact that Moore
was subsequently called on behalf of the estate did not render
Roth competent.   *Non constat* that if Roth had not been per-
mitted to testify, Moore would have been called.   Aside from
this, Roth was permitted to testify to many matters outside of
Moore's evidence.   For instance, he testified that he had never
received the sum of one hundred dollars, which Moore knew
nothing about, and made no reference to it in his evidence.
We seldom have a more striking illustration of the danger of
permitting a living witness to testify to what occurred between
himself and a dead man, where the estate of the latter is a
party in interest.   Here we have a man who waits until
about two years after his guardian's death, and after he has
made a settlement with him, to bring a proceeding against his
estate, and is permitted to testify to and repudiate certain items
in that settlement.   The evidence shows that the settlement
was made in the presence of a reputable justice of the peace,
and there is nothing to show that any information was with-
held from the ward.   The books and papers of the guardian
were before him, and it is inconceivable that so large an item
as one hundred dollars, would have been overlooked by the
ward in an estate of about four hundred and fifty dollars, and
in an account, containing but few items.   The presumption is
very strong that the failure of the guardian to file an account
was to save his ward the expense of it.   He appears to have
managed the estate with prudence and care and charged no
commissions for his trouble.   Under the circumstances, we find
nothing sufficient to overturn the settlement between the
guardian and his ward and it must be allowed to stand.   All
of the subsequent proceedings must be at the expense of the
appellee.

The decree is reversed; the costs of this appeal, and all other
costs below, including the costs of audit, to be paid by the ap-
pellee.