## Newton Gold and wife v. Margaretta Scott et al., Appellants.

*Evidence—Act of 1887—Death of party to a contract.*

The Act of May 23, 1887, P. L. 158 does not make a party an incompetent witness merely because a former owner of the thing or contract in action is dead, but only where his right thereto has passed to a party on the record who represents his interest.

*Death of party—Act of 1891—Surviving party.*

Any surviving or remaining party or any other person, whose interest is adverse to the right of the deceased, may testify to any relevant matter occurring in the lifetime of the deceased, provided such matter occurred

in the presence or hearing of some other living and competent person, who testifies thereto against the surviving or remaining party.

*Evidence—Acts of* 1887, P. L. 158 and 1891, P. L. 287—*Competency of surviving party.*

The controversy being as to a consentable line or boundary between a vendee's land and that of his vendor, a married woman, whose husband had died after execution of the deed, the vendee is competent to testify in rebuttal to a conversation had with defendant's sons, in the husband's lifetime, at the time when a boundary fence had been erected. Even if. the husband is to be considered as a deceased party in interest, the evi-. dence is clearly admissible under the act of 1891. But the husband was not an interested party within the meaning of the act of 1887, and hence the vendee was competent under that statute also.

Argued May 12, 1897. Appeal, No. 63, April T., 1897, by defendants, from judgment of C. P. Butler Co., Sept: T., 1896, No. 132, on verdict for plaintiff. Before Rice, P. J., Willard, Wickham, Beaver, Reeder and Orlady, JJ. Affirmed as to Margaretta Scott.

Ejectment. Before Greer, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict for plaintiff. Defendants appealed.

*Errors assigned* were (1) In overruling the defendants' objection to Charles Duffy, the assignee of David Scott and Margaretta Scott for the land in controversy, testifying as to declarations made by him during the lifetime of David Scott, now deceased; in permitting said Duffy to testify and in receiving said declarations as evidence. (2) In overruling defendants' objection in permitting Charles Duffy to testify under objection and exception as to what he told Wm. Davis, his own tenant, in the absence of Mrs. Scott, the defendant. (3) In overruling and discharging the motion of the defendant, Margaretta Scott, in arrest of judgment. (4) In entering judgment against the defendants, Margaretta Scott and Albert Scott, for the land, etc., Albert Scott having disclaimed title and the jury being sworn as to Margaretta Scott alone. (5) In entering judgment against Margaretta Scott upon the verdict for the land described in the præcipe.

*J. M. Thompson,* of *Thompson & Son,* with him *R. P. Scott,* for appellants.—If Scott, who made the deed to Duffy, were

the owner of the land conveyed, the assignor of the thing in suit, Duffy would be incompetent; but because Scott was not the owner, although a party to the deed, he is, says the court, competent to testify. We don't believe it: Murray v. Railroad Co., 103 Pa. 37.

*S. F. Bowser*, with him *Geo. R. White* and *A. L. Bowser*, for appellee.—The case cited by the defense, Murray v. Railroad Co., 103 Pa. 37, is one in which the grantee, one of the real parties to the contract, was dead, and therefore the grantor was estopped from impeaching her deed. A grantor of title on one side may be dead; if he had no transaction or communication of any kind with the adverse party or under whom he claimed, he is not an assignor in the meaning of the statute: Waltman v. Herdic, 90 Pa. 459.

Moreover, Margaretta Scott, the surviving widow, owner and vendor of the land, being competent and having testified in the case, Duffy would be competent, also, to testify to anything relevant that occurred between himself and Margaretta Scott or those representing her. The same rule would apply to the testimony of Albert and George Scott, who would be heirs at law of David Scott if he had any title: Act of June 11, 1891, P. L. 287.

OPINION BY WICKHAM, J., July 23, 1897:

Margaretta Scott, one of the defendants, owned a tract of land, shaped somewhat like a parallelogram, situate in Oakland township, Butler county. We gather from the evidence that prior to the year 1881 she sold fifteen acres off the east end thereof to two several grantees, the pieces so disposed of containing six and nine acres respectively, and being together bounded, on the west by a line running nearly north and south across the tract and precisely eighty rods long.

Mrs. Scott by deed dated June 2, 1881, wherein her husband David Scott joined, conveyed by courses and distances and north and south adjoiners what purported to be forty-one acres of the remaining land, to Charles Duffy. The latter so far as we can see never lived on his purchase, and did nothing at all with it until 1883, when he rented it to William Davis. At this time there was no fence between the land of Mrs. Scott on the west

and that sold to Duffy. Davis was in a hurry to have a fence built, so that he could begin farming operations, and on a certain day in the spring of 1883, he and Duffy with Albert and George Scott, the latter two it is fair to infer from the evidence representing their mother, Margaretta Scott, met on the ground, to locate the fence. While engaged in so doing, and, indeed, according to the testimony of George Scott, while Duffy and Davis were making the fence, some directions were given and declarations made respecting it and the line, by Duffy to his tenant.

It was alleged for the defense, at the trial, that although this fence was east of the western boundary line of Duffy's purchase, as found by running the courses and distances given in the deed, yet it was intended to mark a consentable line established between Duffy on the one hand and Mrs. Scott on the other. To sustain this theory, George and Albert Scott were called in behalf of their mother. They testified to what was said by Duffy in their presence and hearing in the way of remarks and directions to Davis, who with Duffy was then laying out or erecting the fence. Duffy, whose title had passed to Matilda Martha Gold, one of the plaintiffs, by deed dated September 14, 1891, was called by her and permitted to testify to what he claimed had actually been said by him. This was for the purpose of meeting the defendants' theory as to the consentable line, by showing that at the very time and place when and where it must have been agreed on, if agreed on at all, Duffy refused to recognize the line the Scotts claimed to, alleging that the true line was west thereof, and that he told Davis, for the sake of peace, to put the fence temporarily where they then placed it. His testimony, as well as other evidence in the case, tends to prove that he was not and could not be certain at the time whether nine acres or fifteen acres had been sold off the east end of the tract before he purchased. The description in the deed to him, which was taken from a survey made by Mrs. Scott's husband, was so lacking in landmarks as to leave his east and west boundary lines uncertain until a proper survey should be made of the parts sold to others previously. It may be remarked here, that the fifteen acres spoken of in some way had gotten back into the ownership of the Scott family before this suit was brought.

Objection was made to Duffy's testimony as to what occurred on the day it is alleged the consentable line was fixed, for the reason that David Scott being dead the witness was incompetent. under sec. 5, (*e*) of the Act of May 23, 1887, P. L. 158, which provides that " where any party to a thing or contract in action is dead or has been adjudged a lunatic, and his right thereto or therein has passed either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy " the surviving or remaining party " to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, shall not be a competent witness to any matter occurring before the death of said party."

David Scott, it is true was a party to the deed made by his wife, but he had no interest in the subject matter of the conveyance, save an inchoate tenancy by the curtesy which died with him. No party to the record represents any interest emanating from him, in or to the subject in controversy. The deed is not printed in either paper-book, but conceding that it contains a covenant of general warranty on the part of both husband and wife, Duffy was still competent. He was not impeaching the title of his grantors nor the validity of the deed, which he admitted contained the whole contract. He claimed through and under it and not otherwise. The subject of the controversy really was whether Margaretta Scott was trying to retain after her husband's death a part of that which she and he had granted. Suppose she had sought to retain all the land instead of the portion in controversy, would not Duffy have the right to testify, as in fact he did, not in opposition to, but in favor of, the husband's conveyance ? So far as his testimony went, it tended rather to save the husband from the imputation of having violated his covenant, than to suggest any liability on the part of him or his estate for a breach thereof. If Mrs. Gold were trying to secure more land than the deed to Duffy on its face conveyed, then the controversy concerned only herself and Mrs. Scott. David Scott never owned or pretended to own the land, hence his heirs could have no possible interest in the dispute. His expectant interest had passed like a shadow from his wife's title, and at the time of the trial was as though it had never been. " The statute does not make a claimant an incompetent

witness merely because a former owner of the thing or contract
in action is dead, but only when his right thereto has passed to
a party on the record who represents his interest: " Royer v.
Ephrata Boro., 171 Pa. 429.

But there is a further reason for admitting Duffy's testimony
which is also conclusive: the Act of June 11, 1891, P. L. 287,
provides, inter alia, that any surviving or remaining party or
any other person, whose interest is adverse to the right of the
deceased, may testify to any relevant matter occurring in the
lifetime of the deceased provided such matter occurred in the
presence or hearing of some other living and competent person,
who testifies thereto, against the surviving or remaining party:
Roth's Estate, 150 Pa. 261.

The testimony of Albert and George Scott, witnesses called
for the defense, if left uncontradicted, would have strongly
tended to convince the jury that Duffy, without more, directed
Davis to build the fence where it was placed in 1883, and agreed,
by acquiescence at least, that it should mark the line. Duffy
in rebuttal, gave his version of what he had said to Davis, in
regard to the line and the fence in the presence and hearing of
these young men. Clearly he had the right under the act of
1891 to so testify: Kauss v. Rohner, 172 Pa. 481. Davis, whose
testimony is not assigned for error, corroborated Duffy. What
Davis said about the conversation was undoubtedly admissible,
the talk being so intimately connected with what was being
done, namely, the erecting of the fence, as to be properly a part
of the res gestæ: 21 Am. & Eng. Ency. Law, 99, and authori-
ties there cited.

It may be objected, that Duffy in his testimony in chief re-
ferred to one or two matters outside of his statements made on
the land, in the presence and hearing of Mrs. Scott's sons, but
his utterances concerning these things conceding their material-
ity were not objected to at the trial, nor was it asked that they
should be stricken out. The objection of the defendant's coun-
sel was limited "to any declarations made occurring during the
lifetime of David Scott," and the two assignments of error re-
lating to Duffy's testimony are not and cannot be broader than
the foundation built for them at the trial.

A glance at the record shows that the " declarations " referred
to meant Duffy's statements already spoken of, made when he

and Davis and the two Scotts were on the ground together in the spring of 1883, considering the location of the line and the building of the fence. The jury found on sufficient evidence that the fence was neither the true western line of Duffy's purchase, according to his deed nor a consentable one adopted by the parties in interest. In the deed the only landmark mentioned was a stone, on a public highway, intended to indicate the southwest corner. That it was light and easily shifted may be inferred from the testimony of George Scott to the effect that when he was only about sixteen years old he could and did move it. That as late as 1884 it was about a rod west of the fence and was in that year removed by somebody, so as to be on a line with the fence, was stated by a seemingly disinterested witness for the plaintiffs. This and other testimony tended to show that the stone, after David Scott's survey and up to 1884, · was somewhat ambulatory, every change in its position, however, being eastward in Duffy's direction.

While the evidence as to Mrs. Gold's western boundary was conflicting, it was not and cannot be denied that her surveyor correctly located her line on the· east. This is the eighty rod north and south line, mentioned earlier in this opinion, as the western boundary of the fifteen acre parcel. It was assented to by the Scotts and would fit nowhere on the original tract except where he ran it. From this certain starting point, the only one obtainable, he measured according to the courses and distances in the deed to Duffy, westwardly along the north and south line of Mrs. Gold's tract, and found that the fence was in on her land eight and five tenths rods on the south and eleven and one tenth rods on the north. Mrs. Scott was thus shown to be unjustly holding six acres and fourteen perches of land for which she had long before been fully paid, her theory as to the consentable line, having been rejected by the jury.

But, it is alleged, that the description in the præcipe, no declaration having been filed, is so vague and indefinite that the sheriff cannot give possession of the land recovered. An objection of this sort made for the first time after verdict, is not and should not be favorably regarded. As this case was tried in the court below, the draft made by· G. C. Pillow, the only surveyor who testified on either side, was treated as the description of the disputed premises it being agreed as follows:

" It is admitted that the land the plaintiff claims, whatever it is, is covered by the Pillow survey." The draft shows the locus in quo, its courses, distances, and adjoiners with a surveyor's exactness. Had any objection been made in the court below to the description in the præcipe, which by the way is aided somewhat by the plaintiff's abstract of title, it could and doubtless would have been amended by the draft: Sample v. Robb, 16 Pa. 305. A new description might have been filed, even after verdict, by virtue of the Act of March 14, 1872, P. L. 25; Parks v. Boynton, 98 Pa. 370.

In furtherance of justice, we can, and if necessary will, allow the proper amendment to be made here. No new cause of action will be introduced thereby, no surprise can be alleged; the only effect being to make the description in the præcipe a little more specific, by conforming it to the draft, the latter having been recognized by both sides during the trial, as a full and true description of the land, claimed by the plaintiffs.

We think, however, that the description in the record is sufficient. It is evident that it could not be located on the fifteen acre parcel without crossing the Butler and Millerstown road on the south, or running in on the William Davis land on the north, as the western boundary line of the disputed strip, following the course given in the præcipe, is nearly four rods longer than the widest part of the fifteen acre piece. Moreover, the land in dispute is alleged in the plaintiff's abstract of title, and found by the jury, to be part of the tract conveyed to Duffy. We must therefore go to the land on the west of that actually held by Mrs. Gold, all of which, including the strip in dispute is as set up in Mrs. Scott's abstract of title, in the actual possession of the latter. As only the west line of the strip sued for is said in the præcipe to adjoin the Scott land, necessarily this strip must be the extreme east end of that land, and therefore adjoins, on the west the land marked by the fence, heretofore and now in the possession of Mrs. Gold. By beginning at the fence and measuring westwardly, along the Butler and Millerstown road, eight and five tenths perches, the south line of the land described in the præcipe is obtained with certainty. To find the other lines is then easy enough. Thus, without any aid save that afforded by the description in the record, and the actual conditions easily seen or ascertained on the ground,

which always must be noticed and inquired into, in order to enable an officer to properly execute a writ of possession, the sheriff can do his duty without danger of mistake.

The only other matter assigned for error, necessary to be noticed is the entry of judgment against Albert Scott, he having disclaimed title before the jury were sworn. As the learned trial judge, in the charge, instructed the jury that Albert was no longer a defendant, it is evident that the entry of judgment as to him was a mistake. This is conceded by the appellees' and they are willing to have it rectified. Had the attention of the court below been called to the matter, doubtless it would have been promptly corrected. Under the act creating this court, we have the power, in a proper case, to modify a judgment by setting it aside as to one defendant and allowing it to stand as to another or others.

The judgment is hereby reversed as to Albert Scott and affirmed as to Margaretta Scott, who is directed to pay all the costs of the appeal.