## McDermott's Estate

Before Van Dusen, Stearne, Sinkler, Klein, and Bok, JJ.

*Michael J. O'Donnell*, for petitioner.

*John V. Lovitt*, of *Ballard, Spahr, Andrews & Ingersoll*, for respondent.

SINKLER, J., February 11, 1937.—Argument was heard on January 19, 1937, upon petition and answer. In reaching our present determination the averments in the answer must be taken pro veritate. From the allegations contained in the petition and admitted in the answer, and as well the averments in the answer, in some instances contradictory to those in the petition, the following facts appear:

By decree of this court entered October 5, 1928, respondent was appointed guardian of petitioner's estate and on April 29, 1929, received $2,439.18. Between May 2 and June 17, 1929, respondent invested $2,400 of this sum in what are termed in the answer omnibus mortgages. When petitioner came of age these investments could not be converted into cash without loss. Thereafter respondent was in frequent communication with petitioner's attorney and an account showing the administration of petitioner's estate was prepared by respondent. It was approved by petitioner and at the request of his attorney was not filed. On April 27, 1936, petitioner signed a paper

writing, a copy whereof is attached to the petition before us. This was done not at respondent's request, but at the time the paper was signed petitioner was represented by counsel and acted on his advice.

The paper signed by petitioner recites that he has carefully examined respondent's account as guardian of his estate, that he understands it and finds it correct. He requests respondent to make settlement with him, in order to save expense, without filing the account in this court. He agrees to indemnify respondent from all loss which it may sustain by reason of making settlement with him instead of filing the account. He acknowledges receipt of a sum composed of two specified omnibus mortgages (sic) and cash.

The settlement was made at petitioner's request; the account was satisfactory to him and his attorney; he gave respondent a full release and accepted the assets shown by the account owing to him.

The brief of argument submitted in behalf of petitioner is based in a measure upon alleged facts which may be true but which cannot be considered in reaching our conclusion. The petition contains an averment that the account which was submitted to petitioner was incorrect and improper. This averment is specifically denied in the answer. Therefore, for the sake of this argument, which is upon petition and answer, the averment in the answer prevails, and the account is to be accepted as correct.

The cases cited do not support petitioner's contention: Lukens' Appeal, 7 W. & S. 48, is distinguished from the present case. The settlement was made about nine months after the ward became of age and a manifest error occurred therein. Stanley's Appeal, 8 Pa. 431, is not similar. The release was made less than four months after the ward had attained her majority. The estate had been invested in shares of bank stock standing in the guardian's name. At the settlement the ward accepted the shares in specie at the price paid for them although the

price had declined greatly. From the opinion of Gibson, C. J., the circumstances indicated that the guardian might well have intended to claim the shares as his own if the price advanced, but to foist them off on the ward if the value declined. In Roth's Estate, 150 Pa. 261, the court refused to set aside the settlement made between the guardian and his ward.

These decisions set forth the principles applicable to such cases as the present: ". . . releases given in the dark, and before emancipation from habits of confidence and control, are to be disregarded": Stanley's Appeal, supra: ". . . a guardian may well avoid filing an account in order to save the expense to his ward, and the latter should not be allowed to disturb that settlement, especially after the death of his guardian, unless for clear mistake or fraud": Roth's Estate, supra.

In the case before us the ward became of full age six years before the release was signed. He emancipated himself from the influence of his guardian by securing the advice of an attorney who represented him in the transactions with his former guardian. Neither actual mistake nor fraud in the settlement appears. There is no averment in the petition that these elements existed.

The petition is dismissed.

Bok, J., dissenting.—I dissent and would order an account to be filed.

Respondent received the fund of $2,439.18 on April 29, 1929. On May 2, 1929, it invested $2,300 in three omnibus mortgages, and òn June 17, 1929, it invested $100 in another. Petitioner became of age on February 22, 1930, less than 10 months later. The petition avers that these assets could have been converted into cash on or prior to that date. The answer, whose averments are to be taken as true, denies they could have been converted "without loss prior to February 22, 1921." Despite the double typographical error, I assume the date refers to the date in the corresponding paragraph of the petition, 1930.

There is no averment of when these mortgages fell due, but they were foreclosed on August 20, 1932, October 20, 1932, and December 30, 1935, the largest participation being in the mortgage last mentioned. One participation, for $100, was sold without principal loss on August 23, 1932. On March 25, 1935, respondent sold for $341.94 petitioner's interest of $636.44 in the mortgage which had been foreclosed on August 20, 1932. In addition to this loss of $294.50, the fund was charged with foreclosure expenses totaling $214.84, a final loss of $509.34.

As the mortgage which carried the fund's $1,600 participation was not foreclosed until 1935, I take it, in the absence of any averment in the answer, that the maturity of the mortgages and the maturity of petitioner had little to do with each other, and that a short-term investment was made in a comparatively long-term security.

When petitioner signed the release in 1936, he received $65.97 in cash and participations, still unliquidated, in two of the original mortgages, their book value being stated as $1,878.40.

This release was prepared by respondent. Twice in it there is a statement that the account is not to be filed in this court. The answer admits that petitioner received only $358.82 in income throughout the period of the trust. It admits respondent was in frequent communication with petitioner's attorney and prepared accounts, only one of which it avers he signed.

I do not face this case as I would a request to surcharge. Were I the auditing judge, I might find that respondent has done the best it could and should not be blamed for the collective judgment of the pre-depression world which hindsight now shows to have been ill-advised. Nor do I quarrel with the law of the majority opinion: a release is a release, unless there is fraud, accident or mistake, especially when signed by a person 27 years old.

I am unwilling, however, to dismiss on petition and answer the case of a ward in chancery. This court exists

to look after his interests, and our conscience should automatically incline towards giving him a day in court, not towards denying it to him preliminarily for reasons which concern the merits more than his right to be heard. I want to hear him and his facts, and thereafter speak to the merits and apply the law, which now appears to be against him. As a court of equity, our ears should be long and patient. He has said that the account is "improper and incorrect", and that is enough to suspend my judgment until I have listened to him.

Furthermore, I am surprised that respondent's conscience did not automatically incline towards a free and voluntary disclosure. The fact that it had trouble with its cestui que trust should be enough to make it want to have all the facts aired, and I cannot regard with sympathy any fiduciary who, with the history of this account behind it, relies upon the technical safety of a release which it prepared, containing express provision that the account should not come under our scrutiny.

I do not imply that an account should be filed in the case of every minor who reaches maturity: it would entail needless and heavy expense for many. Where, however, there is dissatisfaction on the part of the beneficiary, or where there is doubt arising out of the character of the investments or the management of the trust, fiduciaries should voluntarily seek the open air. Respondent has consistently followed the opposite course in this case, and I want to hear not only the side of a ward of this court who says he has been dealt with at arm's length, but the tardy explanation of a trustee whom we appointed to protect his interests.

It must be remembered that under section 59 (j) 8 of the Fiduciaries Act of June 7, 1917, P. L. 447, it is mandatory on a statutory guardian to file an account without demand when his ward matures, unless there is an agreement between them: Giese's Estate, 119 Pa. Superior Ct. 232, 236; Phillips' Estate, 119 Pa. Superior Ct. 241.

In Giese's Estate, supra, the court said:

"It has frequently been held that, where a ward makes a settlement with his guardian, after becoming of age, he cannot later compel the guardian to account in the absence of a showing of mistake or fraud in the settlement."

This petitioner has alleged that the account was "incorrect and improper", and I am not disposed to dismiss him peremptorily because he has not filed a replication to an answer which simply denies his allegation and pleads the release. If this procedure is indicative of a practice among fiduciaries, I think it is high time to treat such agreements strictly, with a presumption in the ward's favor, and to incline toward the mandatory requirement of the act.

Judge Klein concurs in this dissent.