[PHILADELPHIA, APRIL 29th, 1837.]

## *Ex parte* CRESS.

### APPEAL.

Where a guardian, about nine months after his ward came of age, stated his account with him and produced his vouchers, and the account with the vouchers was examined by A. in the presence of both parties, and found to be correct; and the ward received the balance appearing upon the account, and some time afterwards, submitted the account and vouchers to B., who also found them to be correct; and four years afterwards the ward applied to the Orphans' Court for a citation to the guardian, to settle his account in the office; it was *held* that the Orphans' Court was right in refusing the citation; there being no allegation of any specific error in the account settled between the parties.

THIS was an appeal from a decree of the Orphans' Court of Montgomery county.

On the 16th,of April 1834, George H. Cress presented his petition to that court, setting forth that on the 17th of August 1824, Dr. George Martin was appointed guardian of his estate; that the said guardian had never filed any settlement of his accounts as such; and that he had large sums of money in his hands, for which he had not accounted with the petitioner, and praying a citation to the said George Martin to appear and settle his accounts. To this petition an answer was filed by the said George Martin, setting forth that the said George H. Cress arrived at the age of 21 years sometime before the 8th of April 1830; that on that day the petitioner and respondent mutually chose a certain Henry Daub, Esq. to examine the accounts of the respondent as guardian; that the said Henry Daub did carefully examine the accounts, and struck a balance of $4,701 21; which sum was paid on the same day to the petitioner, who then executed a release and full discharge of the respondent, which release was duly recorded; that at the time of the settlement, it was not the practice for guardians to file their accounts before the register, as the respondent was informed and believed; but the custom was to settle with the wards and pay them the balance, &c.; and that by reason of the lapse of time since the settlement with the petitioner, the respondent's papers and vouchers were in all probability lost or destroyed, &c.

The petitioner filed a replication, admitting the settlement of Henry Daub and the execution of a release, but alleging that he did

not concur in the appointment of Daub, who acted solely on behalf of the respondent; that the settlement was made at the house of the respondent, and that he, the petitioner, at the time the settlement was made and the release executed, was ignorant of his rights, and unacquainted with his affairs; having just arrived at age; that he did not receive the whole consideration money mentioned in the release, and did not intend by executing it, to discharge the respondent from responsibility as guardian. The replication denied the existence of the custom mentioned in the answer, and averred that if such a custom existed, it was not binding.

To this replication a rejoinder was filed, averring that the petitioner and the respondent did mutually agree in the choice of Henry Daub to audit and settle the accounts; that the said Henry Daub did inform him (the petitioner) of his rights, and explain them to him; and that the petitioner shortly after the settlement, submitted the papers to a certain John Hocker, who examined them in the presence of the petitioner and found them correct; and that the petitioner thereupon expressed himself satisfied with the settlement.

The deposition of Henry Daub, which was taken on the part of the respondent, was as follows:

" I was called upon by Dr. George Martin to draw a release from George H. Cress to him, and to present it at his house on a certain day, at which time George H. Cress would be present, in order to execute the release. I attended, and before the execution of the release took place, I went over the addition of the account that had been stated by Charles Martin, (as was said) in which I discovered an error of ten dollars, the error was rectified, and moneys paid in part, and part in an obligation, and Cress appeared very well satisfied. His rights were then stated to him by me, as far as I could state them; then he signed and executed the release, and then the loose receipts were placed into his hands by Martin, and the account as stated, so that he might get any other person to examine and see that the account that was stated at that time, was correct, which he said he would do; and the doctor said to him, if there was any error in it, that he should call on him, and it should be rectified. I have acted as a guardian, but not got through with it; and as a guardian, and of my knowledge of the rights due him, the said Cress, I believe the doctor acted in the matter as a honest man would do in the management of his own affairs." *Cross-examined.*—" The release was executed on the 8th day of April, A. D. 1830. The settlement was made at Doctor Martin's house. George H. Cress was present. I don't know who gave him notice to attend. Doctor Martin requested me to come. I don't recollect that Cress asked me to come, but it might be possible he did. Dr. George Martin laid before me an account said to be prepared by Charles Martin.

Charles Martin is a son of Doctor Martin's. The paper hereunto annexed, marked A, is the account I alluded to as having been laid before me by Doctor Martin. I merely went over the addition of said account, but did not examine the items. I counted up the figures on the Dr. and Cr. sides is what I mean about the addition. I therein discovered an error of ten dollars against the doctor, and had it rectified. I saw the receipts or vouchers, and don't know whether they were all there or not, but what was there was satisfactory to both parties, and acknowledged by the said George Cress. I looked over all the receipts I think. I compared the amounts of the receipts with said statement, and found them to correspond from beginning to the end. I looked at the amount charged in said account, and added both up and struck the balance. I can't state the balance from recollection. I can't tell without looking at the release. In looking at the said release I find the balance is $4701 21½, being the full sum of his share. He gave the release in full for the moneys coming from his father's and also from his uncle's estate: the above sum of $4701 21½ was the balance, after the expenses were deducted—I mean the whole expenses of said guardianship and including the expenses of the ward. I don't recollect the amount deducted for the expenses of the ward. I can't say how much was paid Mr. Cress on that day in money—there was some paid. The moneys that I saw paid on that day are included in the release—there was an obligation given in as so much cash—I can't say who it was against. George Cress said he was of age when that settlement was made. I don't know how much he was over age." *Re-examined.*—"When I was acting between the said parties, I acted as umpire for them both, as I considered, and not for one alone. I don't consider George Cress as smart as some, but he is likely to know his own rights. I can't recollect whether George Cress gave me any information about the estate at the settlement. I thought he was acquainted with his affairs, from the conversation he and the doctor had at the time."

John Hocker, a witness on the part of the respondent, deposed that at the date of the settlement, viz. the 8th of April 1830, the petitioner was 21 years and 9 months of age. That about a month after that date the account of Dr. Martin was submitted to him by the petitioner, together with the vouchers, when he examined and compared them and was satisfied with the accuracy of the settlement; that he explained the business to the petitioner, who appeared well satisfied.

William Powell, Esq. who was the Register of Wills for the county of Montgomery, testified that it had not been the practice theretofore for guardians to file their accounts in that office; that the general practice was for guardians to take a release from their wards, when they arrived at age, to get the release acknowledged before a justice of the peace, and put it on record.

(Ex parte Cress.)-

The account as settled on the 8th of April 1830 by Henry Daub, and the release executed on that day by the petitioner, were also produced.

The Orphans' Court refused to grant the prayer of the petition for a citation to Dr. Martin; and the petitioner thereupon appealed to this court.

Mr. *Tilghman,* for the appellant, argued, that the Orphans' Court was bound to require a settlement of accounts by a guardian, when called upon by the ward, whether any private settlement or arrangement had been made between them or not; and that the settlement and release in this case were not of such a character as to bind the petitioner. He cited the acts of 1713 and 1832. *Bowman* v. *Herr,* (1 *Penn. Rep.* 282.) *Nutz* v. *Rucker,* (1 *Watts,* 229.) *Say* v. *Barnes,* (3 *Serg. & Rawle,* 114.) He admitted, however, in answer to an inquiry by the court, that he could not point out any specific errors in the account as settled by the parties.

The Court declined hearing Mr. *Powell,* who was for the appellee.

HUSTON, J., (after stating the facts) delivered the opinion of the Court.

Beyond all question, every act of assembly on the subject from 1713 to this time, makes provision for compelling executors, administrators or guardians to settle their accounts; and an act of the 30th of March 1821, had directed guardians to file accounts of the management of the estate every three years, or when required by the court; and this court does not feel the slightest wish to deprive a ward of all the protection afforded him by the law: yet it has no wish to indulge a ward in harassing a former guardian. We are aware that many accounts of guardians have been settled with the ward after coming of age, and the Orphans' Court never heard of them. Perhaps it is always safer and better, even where the ward is satisfied, to pass the account in court. The expense of this, however, where the guardian has done his duty, is taken from the fund, and thus falls on the ward. Where a settlement is made at home, to save this expense, it is at least ungracious to bring it into court after the lapse of several years. If this account had been settled in court, we have every reason to believe, that no objection would have been made to it; and it became, as the law then stood, final in one year.

Still a case may readily occur, where a guardian may properly be compelled to settle his account in court, after a settlement with the ward and a release from him; and he would generally be ordered to do so in a recent case. After four years, we think it ought not to be ordered, except on specific grounds. In this case the ward

(Ex parte Cress.)

had the account and all the vouchers; and if his guardian had received any money from any person and not put it in the account, or had omitted to collect any money or rent, which he could and ought to have collected, or if he had charged Cress with any money not expended or improperly or uselessly expended, there was ample time and opportunity to discover it; and if any item had been pointed out in either side of the account, which was untrue or illegal, it ought to have been mentioned in the petition; but nothing of the kind is done. Or if on making the settlement and obtaining the release, the guardian had kept the paper containing the account, and kept all the vouchers, and refused to submit them to the ward or his friends, an account might be ordered in court. The reverse was the case here. The ward has the account and vouchers, and has had them four years; his friends have examined them and found no error; he does not point out any thing wrong; and there was no error in dismissing his petition. Part of the fund was given over to the ward in bond or bonds or some such security: There is no allegation, that loss or even difficulty to the ward has arisen from this.

Let this opinion be understood: if the ward had not at the time of settlement, and after, had the assistance and advice of friends; if he had not the possession of the account and all the vouchers; or if having them, he had pointed out to the court any error of charge or credit, an account might have been properly ordered after four years. But under the circumstances of this case, it would be too much to open this matter on general and loose allegations; or rather it would be improper in this court to reverse the decision of the Orphans' Court of the county for what they have done, or refused to do. Such cases are in a good measure to be governed by the sound discretion of the Orphans' Court; and I would not reverse, unless in a very strong case in which a specific ground is laid. This is not such a case.

                                  Decree affirmed.