# Rebecca Walls' Appeal.

1. A guardian is bound, upon the arrival of his ward of age, to settle in the register's office a full and complete account of his guardianship, including all the items embraced in any partial accounts he may previously have filed. The account having been passed by the register must be certified to the Orphans' Court, where, after due notice, it may be finally confirmed, and thereby become conclusive upon all parties.

2. The fact that during his ward's minority a guardian filed an account in the register's office, which was afterwards confirmed in the Orphans' Court, does not relieve him of the duty of filing a final account

upon the arrival of the ward at full age.  Such partial account is not conclusive upon the ward.

3. In this case a guardian, who had filed an account in the register's office during his ward's minority, which was confirmed by the Orphans' Court, but who omitted to file a final account upon the arrival of his ward of age, was required to file such final account, upon petition of the ward, filed eight years after her arrival at majority.

4. The duties of guardians as to filing triennial accounts in the office of the clerk of the Orphans' Court, and the legal effect of such accounts, and as to filing final accounts, as required by the Act of March 29th 1832, commented upon and explained.

May 23d 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

APPEAL from the Orphans' Court of *Huntingdon county :* Of July Term 1883, No. 69.

This was an appeal by Mrs. Rebecca Walls, *née* Harmon, from a decree of said court refusing to order the filing of a final account by Benedict Stevens, who had been her guardian during her minority.

The record showed the following: On April 11th 1881, Rebecca Walls, formerly Rebecca Harmon, filed her petition in the Orphans' Court, setting forth that her father, Frederick Harmon, died intestate July 1st 1852, leaving surviving him a widow and eight children, of whom the petitioner, the youngest, was a minor (born September 3d 1851) ; that on November 8th 1852, Benedict Stevens was appointed by said court guardian of her person and estate ; that the petitioner is now of age, and that her said guardian has never filed an account of his trust since she reached her majority.  The petitioner therefore prayed for a citation against said Benedict Stevens, commanding him to file an account or show cause, &c.

A citation was awarded as prayed for, to which said Stevens filed an answer setting forth that he filed a guardianship account on January 15th 1863, which was confirmed April 20th 1863, no exceptions having been filed thereto ; that he had expended all the moneys of his late ward in such way as was lawful and for her best interest, and that he had received no money or property belonging to his ward since the filing and confirmation of said account ; that no complaint was made by the petitioner during the twenty years since the confirmation of said account, nor since her arrival of age more than eight years ago ; that the respondent is over 80 years of age, and in feeble health.

After hearing, on petition and answer, the court filed the following decree :

"25th October 1881, the court refuse to order filing of account by guardian, it appearing that he has settled and filed

account, but the ward has leave to present petition for leave to file exceptions to account already filed and confirmed."

On November 14th 1881, Mrs. Walls filed a second petition setting forth that at the time of filing said account by her guardian, on January 15th 1863, she was but twelve years of age, and knew nothing of the matter; that she had never received from her guardian any part of her father's estate, and that, being illiterate, she was ignorant of her rights until she was informed, a short time previously to the filing of her first petition, that she was entitled to have the matter investigated. In this petition she charged fraud in the said account filed January 15th 1863, and prayed leave to file certain specified exceptions thereto.

No answer was filed to this petition, but the answer to the former petition appears to have been treated as the answer to this.

A rule to show cause was granted, on the hearing of which the court, BARNETT, P. J., made the following decree:

" And now, 29th September 1882, this cause being called and heard, their answer denying fraud, in the absence of any testimony to support the rule, and owing to the laches of the applicant, the rule is discharged."

The petitioner thereupon took this appeal, assigning for error both the above decrees of the court.

*L. H. Beers*, for the appellant.

[MERCUR, C. J. Was the account of January 15th 1863, filed in the Register's office or in the Orphans' Court?]

In the Register's office, and it was confirmed in the Orphans' Court.

When the ward arrived " at full age " it was the duty of her guardian " to settle in the Register's office a full and complete account of his management of his minor's property under his care, including all items in each partial settlement." Act of March 29th 1832, § 10, Pur. Dig. 413 ; Overholtzer's Estate, 8 L. Bar 109. The account filed by the guardian on January 15th 1863, when the ward was but twelve years of age, should only have been " filed in the office of the clerk of the Orphans' Court for the information of the court and the inspection of all parties concerned." Act of March 29th 1832, § 10, Pur. Dig. 413.

That account was not a final account, and did not conclude the ward, even though it went through the forms of a settlement and confirmation : Douglas's App., 1 Nor. 169 ; Yeager's App., 10 Cas. 173 ; Fotz's App., 5 P. F. S. 428. The decree of April 20th 1863, confirming the account, made when the ward was a minor, and without notice, does not bind or conclude her,

and it is not a final decree. The court could only make a final decree on an account filed after the ward arrived "at full age," that would "be conclusive upon all parties:" Act of March 29th 1832, § 10, supra; McKee v. McKee, 14 Pa. St. 237.

The ward is illiterate, and was married when yet a minor but eighteen years of age, and still continues a feme covert. She knew nothing concerning the amount and value of the estate left her until a short time before presenting her petition for a citation.

Lapse of time is.no·answer to a demand for an account by a guardian where the ward was at the time of arriving at full age a feme covert: Beal v. Stehley, 9 Har. 376; Perry on Trusts, § 867; Eckert's App., 6 W. N. C. 21. The statutes of limitation do not run against express trusts: Hill on Trustees 264; Com. v. Moltz, 10 Barr 527. But it matters not whether the decree confirming the account of the guardian was valid or void, it being impeached on the ground of fraud, which was discovered by the ward in 1878, and shortly before the citation awarded. The statute of limitations does not begin to run till after the discovery of the fraud: Kuhns's App., 6 Nor. 100.

[No counsel appeared contra, and no paper book was submitted on behalf of the appellee.]

Mr. Justice CLARK delivered the opinion of the court October 1st 1883.

The ninth section of the Act of 29th March 1832, Pur. Dig. 413, pl. 41, requires that "every guardian shall, within thirty days after any property of his ward shall come into his hands or possession, or into the hands or possession of any person for him, file *in the office of the clerk of the Orphans' Court,* a just and true inventory and statement, on oath or affirmation, of all such property or estate."

The tenth section of the same Act provides that "every such guardian, whether required by the court to give security or not, shall, at least once in every three years, and at every other time when so required, render an account of the management of the minor's property under his care, which accounts shall be filed *in the office of the clerk of the Orphans' Court,* for the information of the court, and the inspection of all concerned. And every such guardian, unless previously discharged or removed, shall, on the arrival of his ward at full age, *settle in the Register's office,* a full and complete account of his management of the minor's property under his care, including all the items embraced in each partial settlement; and the decree of the Orphans' Court upon *such final accounts,* shall, like other decrees of the court, be conclusive upon all parties unless reversed, modified or altered on appeal."

[Walls' Appeal.]

The inventory thus to be filed is intended to exhibit in detail, as nearly as may be, the value of the minor's estate, real and personal, which comes into the custody and control of the guardian; it forms the basis of his liability to account, and is the prima facie limit of his responsibility. It furnishes proof and protection to the ward in the event of the guardian's negligence, or other maladministration of the estate.

The triennial accounts, being of an ex parte character, are not filed in the Register's office, nor are they passed by, nor are the vouchers submitted to the inspection of the register, as in settlements of accounts they usually are. They are filed in the office of the clerk of the Orphans' Court, without notice by publication or otherwise, along with the inventory; they are not in any strict sense settlements, to conclude any but the person submitting them, they are rather in the nature of statements filed " for the information of the court and the inspection of all parties concerned." They are intended to exhibit the situation of the fund, whether invested or not; if invested, where and how, and what interest and incomes are received; also what expenditures have been made towards the support and maintenance of the ward, and the repairs and improvements of his estate. And, as the ward and all other parties concerned are presumed to act upon the faith of these statements of account, it follows, that the guardian is estopped from denying their correctness, excepting, perhaps, so far as may be necessary to correct errors or mistakes.

Thus, then, by means of the inventory and the triennial accounts, the ward and all others interested are advised not only as to the original extent and character of the fund, but of its subsequent management and disposition, and they are thus enabled from time to time, if necessary, to intervene to protect it against loss from the extravagance, negligence, or willful default of the guardian.

Upon the removal or discharge of the guardian, however, or on the arrival of the ward at full age, the guardian " must settle, *in the Register's office*, a full and complete account of his management of the minor's property under his care, including all the items embraced in each partial statement." If the minor be living he is now sui juris, he is liable to legal process, and may be served with notice. His disregard of such notice and process is at his own peril; if he be dead, the law will raise an administration, which will protect the rights of his estate. The whole account of the management of his estate is therefore thrown open to investigation, from first to last, the account is necessarily full and final, the vouchers must be submitted to the investigation of the register; the account is passed, allowed, filed, and subsequently certified to the Orphans' Court for con-

firmation and approval after due notice by publication as regulated by law, " and the decree of the Orphans' Court upon such final account, shall, like other decrees of the court, be conclusive upon all parties unless reversed, modified or altered on appeal."

The mode of procedure directed by the act of March 29th 1832, has been uniformly followed by the profession throughout the state, and the construction herein given is but a restatement of previous rulings of this court: Dietterich *v.* Heft, 5 Barr 87; McCormick *v.* Joyce, 7 Barr 249; Yeager's Appeal, 10 Casey 173; Foltz Appeal, 5 P. F. Smith 428.

In the case of Douglas's Appeal, 1 Norris 169, the late Justice SHARSWOOD, in delivering the opinion of the court, says: "A partial account of guardians, during the minority of the ward, whether filed in the Register's office, or in the office of the clerk of the Orphans' Court, are not for settlement and confirmation, and even if they go through the forms of a settlement, and confirmation, are not conclusive upon the ward : Yeager's Appeal, 10 Casey 173.    There was no one to represent her and take care of her interest.    The court cannot be expected to do so. They have not knowledge of the necessary facts, to enable them to adjudicate.    It is clear that the decision in Rhoads's Appeal, 3 Wright 186, has no application but only to cases where the account is properly and legally presented for settlement and confirmation."

Applying the provisions of the statute and the rulings of this court to the case in hand, it clearly appears, that the account of Benedict Stevens, guardian of Rebecca Walls, filed in the Register's office of Huntingdon county, on January 15th 1863, when the ward was only twelve years of age, was not, in the nature of the case, a final account.    A final account could only be filed at the determination of his trust ; it was not, therefore, properly for settlement and confirmation, and, although it went through those forms, the action of the court was not conclusive upon the ward.    She had no one to represent her, no one to take care of and protect her interests, and, as it was not pretended that there was any ratification by her, since arriving at majority, she has a right to insist upon the filing of a final account, which shall embrace a full and complete account of his management of the minor's property under his care.

> Decree of October 25th 1881, refusing to order Benedict Stevens to file an account of his guardianship of Rebecca Harmon, now Rebecca Walls, is reversed, and a procedendo awarded. It is further ordered that the costs of this appeal be paid by the appellee.