## Alexander's Estate. Lightner's Appeal.

[Marked to be reported.]

*Guardian and ward—Release—Judgment—Estoppel.*

Where a ward, after coming of age, makes a settlement with his guardian without the intervention of the court, receives the amount agreed to be coming to him, and gives a release or acquittance to the guardian, he cannot afterwards compel the guardian to account, without pointing out some mistake or other error in the settlement, or showing that fraud had been practiced on him by his guardian whereby he has been prejudiced.

A guardian invested, in good faith and with proper care, the funds of his wards in a judgment. When the wards became of age they executed a release to the guardian, in proper form, and with full knowledge of all the facts relating to their estate. The debtor then paid to them the interest on their respective proportions of the judgment. No formal transfer was made on the docket to the wards of their respective portions of the judgment. Four years after the settlement with the guardian, and after the guardian's death, the wards cited his administrator to account. *Held*, that they were bound by the release and were not entitled to an account.

Argued May 18, 1893. Appeal, No. 463, Jan. T., 1893, by James H. Lightner, administrator c. t. a. of Newton Lightner, deceased, guardian, from decree of O. C. Lancaster Co., distributing estate of James K. Alexander, deceased. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to report of auditor on exceptions to guardian's account.

The account was referred to Charles R. Kline, Esq., as auditor, who reported the facts as stated in the opinion of the Supreme Court.

Exceptions to the auditor's first report were sustained by the court in an opinion in part as follows, by McMULLEN, J.:

" [At the time the guardian loaned the $4,200 realized from the sale of his wards' real estate to James M. Hopkins and took his judgment bond for that amount, there were already two judgments against Hopkins, held by Jacob Thome, one for $5,200, the other for $10,000; the first originally entered in 1856, the other in 1859. The latter was revived in 1883 (October 20) for $15,075.50, and again in 1888 (September 25) for

$18,800, being for original principal and accrued interest.] [5]
The interest was also allowed to accumulate on the $4,200
judgment, and we find by Lightner's memoranda that on April 1,
1885, the arrearages due on the wards' two thirds of this judg-
ment were $1,420.   On that day eighteen acres and one hundred
and fourteen perches of land were sold by James M. Hopkins
to Henry Shaub for $1,000, and were released from the lien of
this judgment.   This purchase money, with a bill for $368 for
maintenance of the wards, and part of a legacy coming to Hop-
kins at that time, were appropriated by Lightner to pay this
interest.   Lightner then prepared his account or statement,
and shortly afterwards had a settlement with the wards, in
which portions of this judgment were stated as forming part of
the amount paid over to them, and these portions constitute
the items for which credit is asked in the account.   As before
stated, no transfers to the wards were ever executed.   Lightner
continued to hold and control the whole of the judgment, as
he had done before—had it revived in his name as guardian,
and, on April 1, 1888, released sixty-seven acres and one hun-
dred and forty-five perches of land from its lien.   These acts
are entirely inconsistent with any theory of joint ownership by
Lightner and the wards; the latter had no authority or control
over it whatever, and it does not appear that they were ever
consulted in reference to it, or ever informed of any action
on the part of Lightner in reference to it.

  " It is true they agreed to accept these several portions at
the time of the settlement in 1885.   They were then young
men—one a minor, one barely of age, and one a few years over
his majority.   They do not appear to have had any counsel or
advice except that of the guardian himself, in whom, as an
honored member of the Lancaster bar, as well as a near rela-
tion, they may be presumed to have had the greatest confi-
dence.   The judgment was a lien against the extensive real
estate of their grandfather, and to their inexperienced minds
doubtless appeared to be the best possible security.   [Was it
explained to them that prior to this judgment were two others
amounting originally to the sum of $15,200, which, by accumu-
lation of unpaid interest, then, had increased to upwards of
twenty-two thousand dollars; and that on the very judgment
which they were asked to take there had accumulated upwards of

$1,400 of interest, which had a very short time before been paid, with proceeds of part of the very land on which it was secured?] [5]  Without such explanation a settlement of this character would be open to serious question, even if consummated by actual transfer.

"Here there was no delivery, the judgment remained entirely and absolutely under the control of Newton Lightner. [The prior judgments continued to grow larger in amount while the land not only depreciated in value, but more of it was subsequently released from the lien of the judgment, and the wards were powerless to interfere. Under these circumstances we think they ought not to be bound by the settlement of 1885, so far as these unassigned portions of this judgment are concerned,] [5] and so far exceptions second and third, filed on behalf of the wards, are sustained, and the estate of the guardian is surcharged with the amount of these items of credit."

The report was referred back to the auditor, who reported a decree in accordance with the opinion of the court. Exceptions to the auditor's second report were dismissed.

*Errors assigned* were (1–3) dismissal of exceptions, quoting them; (4) in dismissing all the exceptions; (5) portion of opinion in brackets, quoting it.

*George A. Lane*, for appellant.—Receiving interest on the exact portions of the judgment, mentioned in the release signed by the wards, for over four years, was an act of ownership which estops them from attempting to collect this amount again from their guardian's estate after his death. The onus probandi of showing any fraud or error is on them. In the absence of fraud or concealment the release of the wards must stand: Gress's Ap., 14 Pa. 468; Rouch's Est., 2 Pearson, 480.

An infant's admissions are receivable even in criminal cases, the infant being regarded as competent to confess the truth in fact, though he may lack sufficient discretion to make a valid contract: 2 Whart. Ev. § 1124; 2 Gr. Ev. § 363.

Before these wards can escape from the bar of their release, it is necessary for them to make specific charges of fraud, and sustain them by clear proof: Cummins v. Hurlbutt, 92 Pa. 166 ; R. R. v. Shay, 82 Pa. 198; Marr's Ap., 78 Pa. 66; Marten's

Ap., 13 W. N. 289; Greenfield's Est., 24 Pa. 232; Weller's Ap., 103 Pa. 597; Roth's Est., 150 Pa. 261.

An examination of his account will show that he managed their estate with prudence and care, and charged no commissions for his trouble; the settlement he made with them was • full, fair and honest, and they are now estopped from calling it in question: Lewis v. Browning, 111 Pa. 504; Stryker's Est., 17 W. N. 13; Hawkins' Ap., 32 Pa. 263; Marr's Ap., 78 Pa. 66; Fahnestock's Ap., 104 Pa. 46; Eyster's Ap., 16 Pa. 376.

Laches and neglect are always discountenanced: Mellish's Est., 1 Pars. 482; Wilkinson's Est., 1 Pars. 177; McCartin v. Traphagen, 11 Atl. R. 156.

*Wm. Aug. Atlee* for appellee.—The judgment was worthless, rendered so by the neglect of the guardian in allowing prior judgments to be increased at the times of revival by adding the interest to them until their aggregate was more than the value of the whole estate of the defendant in the judgments. Not a cent of principal was ever paid on them, and not a cent of interest except the proceeds of lands, bound by the judgments, sold, and the purchase money applied to reduction of accruing interest.

In all private settlements between guardian and ward, the guardian is held to uberrima fides. He should show that his ward was fully acquainted with the facts of the case: Musser v. Oliver, 21 Pa. 362; Kinter's Ap., 62 Pa. 318.

OPINION BY MR. JUSTICE THOMPSON, July 19, 1893:

In 1867 Newton Lightner became the guardian of Mary, Howard, Percy and James, minor children of James K. Alexander, deceased. As such guardian he received $4,200, the purchase money of certain real estate belonging to the estate of James K. Alexander, deceased. Of this sum $1,400 was the interest of the widow, and the remaining $2,800 belonged to his wards. The entire sum was invested by the guardian in a judgment against James H. Hopkins, the father of Mrs. James K. Alexander. This judgment has been regularly revived up to the present time. Upon the judgment bond was noted that one third of it belonged to Mrs. Alexander, the interest to be paid to her for life, and upon her death the principal to be paid

to her children, and two thirds to the guardian of the minor children of James K. Alexander, deceased. In April, 1885, the guardian submitted to his wards an account of his receipts and expenditures, and on May 1, 1885, Percy Alexander and his mother, Mrs. Alexander, certified that they had examined it and found it to be correct. In July, 1885, when all of the wards except James were of age, he made a settlement with them, and they executed a full release from all claims and demands against him. In this they acknowledge that they have received their respective shares, they have examined the account, and have found it to be correct. In this settlement they receipted for their respective interests in this judgment against Hopkins. Subsequently Hopkins, the debtor, paid to Howard the interest on his proportion of it, and Percy the interest on his proportion, both up to April 1, 1889. The guardian having died in November, 1889, the appellant was appointed administrator c. t. a. In July, 1890, Howard and Percy filed a petition for a citation upon the administrator to file an account. He accordingly filed his account January 2, 1891, and claimed credit for the guardian for the respective amounts of these wards' interests in the Hopkins judgment, and for a counsel fee of $150. The auditor allowed the counsel fee and those credits as to the wards that were of age when the release was executed, and disallowed any as to the ward who was not of age at the time. The court sustained the exception of the wards, overruled the finding of the auditor, and directed him to surcharge the accountant with the amounts of these wards' interests in the judgment and $100 of the counsel fee. This was done in an amended report, and it is assigned for error.

The guardian was the uncle of the wards, and appears to have been actuated by a kind interest in them and a desire to serve them. From the time of his settlement with them in 1885 up to the time of his death, no question appears to have been raised either as to the propriety or correctness of his actions as guardian. The letters written in 1887, 1888 and 1889 by Percy and James establish this conclusion, and clearly indicate that his action in regard to the Hopkins judgment was unquestioned by them. They in addition received from Hopkins interest on their respective portions of this judgment.

The auditor finds " that while no actual transfer appears in

the prothonotary's docket by Newton Lightner to these wards of said respective portions of this judgment, yet the fact is that James M. Hopkins, the debtor in this judgment, had paid to Howard Alexander the interest on $158.21 thereof up to April 1, 1889, the exact amount specified by Newton Lightner in said release to be Howard's portion thereof, and he paid to Percy Alexander the interest on $648.45 thereof, up to April, 1889, the exact amount specified by Newton Lightner in said release to be Percy's portion thereof, and he paid to James H. Alexander the interest on $243.90 thereof up to April 1, 1889, the exact amount specified in said release to be James's portion thereof." Howard in his receipt for interest recites " that it is on $158 his portion of the judgment." In making the investment in this judgment no fraud is alleged or shown. It seems to have been regarded as judicious, both by the widow as well as by the guardian. In fact the auditor finds " as to the judgment not being good by reason of prior liens, there is no evidence offered to show the value of the property, or that it would not bring enough to satisfy this lien in full, and no attempt has been made to collect it." When the wards, three of them being of age, executed the release, there is no evidence that the guardian concealed any fact or made any misrepresentations. He acted in the transaction in entire good faith, and the auditor finds " the release is sufficient in form and clearly sets out the manner of payment, and there is no evidence that these wards were not fully made acquainted with its contents." They in fact recognized his good faith by remaining silent for four years, by accepting their proportions of this judgment, and by receiving from the debtor interest on the same for several years. Having made this settlement, executed the release, received interest, and having remained silent and acquiesced in them for years, these wards, without allegations or proof of fraud or mistake, cannot be permitted to set them aside. In Roth's Estate, 150 Pa. 266, it is said by Chief Justice PAXSON : " The rule upon this subject was fairly stated in Luken's Ap., 7 W. & S. 48, where it was said by KENNEDY, J.: 'The ward, under the express provision of the act of assembly, has a right to require that such settlement shall be made by the guardian before the court; but if he chooses, after his arrival at full age, to make a settlement with his guardian without the interven-

tion of the court, and, after having received the amount agreed to, be coming to him, to give an acquittance or release to the guardian, he ought not to trouble the court, or his guardian either, afterwards, without pointing out some mistake or other error in the settlement, or showing that a fraud has been practiced on him by his guardian whereby he has been prejudiced.'"

The fact that there was no formal transfer on the docket of their respective portions of the judgment to the wards will not warrant the conclusion that they are not bound by the release and settlement made in 1885. As the widow, the guardian, and the wards were the owners of the judgment, doubtless it was considered advisable that a formal record of the ownership of each should not be made. As these wards accepted their proportions of the judgment as found by the auditor, as the debtor paid them interest on their respective portions, as they have for years been in fact the owners of their interests in the same, without any request to assign upon the record such respective interest, and as such ownership with all the rights incident thereto is not denied by anyone, they cannot successfully assert that they are not the owners, because no formal transfer has been made on the docket.

In regard to the counsel fee, it is sufficient to say that it was earned, and it was properly charged against the wards.

For the reasons thus given it is now ordered and decreed that the decree of the court below be reversed, that the original report of the auditor be confirmed, that distribution be made accordingly, and the appellees pay the costs of this appeal.