## Giese's Estate.

Argued May 7, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*H. F. Stambaugh,* with him *Austin L. George, Ralph H. Demmler* and *Watson & Freeman,* for appellant.

*W. M. Ewing,* with him *John F. White,* for appellee.

OPINION BY RHODES, J., October 2, 1935:

The appellant, Potter Title and Trust Company, was appointed guardian of the estate of Richard Paynter Giese, a minor, on May 8, 1919. The funds comprising the estate of the minor were invested by the guardian

in a mortgage pool maintained by it. The minor became of age on December 9, 1930. No account was filed by the guardian until it filed its first and final account on November 2, 1934, almost four years after the ward became of age. The account showed a balance of $30.60 in cash, and $1,455 invested in the mortgage pool. The ward filed exceptions to the account, and objected to taking a participation certificate in the mortgage pool. He claimed that he was entitled to an amount in cash equal to the balance on hand, as of December 9, 1930, with interest at 6%. The guardian admitted it could have paid over the balance due the ward in cash on December 9, 1930, when he became of age, or at any time until July 17, 1933. On July 17, 1933, the Orphans' Court of Allegheny County stated that it would thereafter disapprove the investment of funds under its supervision in any existing general mortgage pool. The guardian was thereupon unable to convert the ward's investment at the date of the filing of the first and final account. The guardian gave no reason for its failure to file its account for four years after the ward became of age, other than that it has been the practice of trust companies in Pittsburgh not to file an account as guardian until requested to do so.

Richard Paynter Giese, the ward and appellee, testified that he was not aware, previous to a week before November 30, 1934, that he had an estate in the hands of the Potter Title and Trust Company.

The fund invested in the mortgage pool by the guardian in this case earned interest, from the time of its original investment in 1920 to December 31, 1931, at the rate of 6%. From January 1, 1932, until December 31, 1932, the interest was reduced to 5%, and after January 1, 1933, to 4%.

The court below, after hearing on the exceptions to the account, made a decree on January 2, 1935, award-

ing the balance in the hands of the accountant to the ward, in cash; but it did not add interest at the rate of 6% from the date on which the ward became of age. The Potter Title and Trust Company filed exceptions to this decree of the court below. The decree was opened, and the guardian was permitted to offer further testimony. On February 19, 1935, the court dismissed the exceptions of the guardian to the decree, and affirmed the decree entered January 2, 1935. The Potter Title and Trust Company appealed.

Appellant now contends that it should not be obliged to pay, in cash, the amount of the ward's estate, for two reasons: (1) Section 59 (j) 8 of the Fiduciaries Act of June 7, 1917, P. L. 447, does not impose any penalty for failure of the guardian to file an account when the ward becomes of age and does not show an intention to hold the guardian responsible for depreciation occurring in assets after that event; (2) failure of the appellant to file its account as guardian when the ward became of age was not the proximate cause of the inability to convert the interest in the mortgage pool into cash.

Depreciation in the assets of the estate is not here involved; and we see no merit in appellant's second proposition.

The assignments of error are to the court's decree.

The Potter Title and Trust Company was appointed guardian of the estate of Richard Paynter Giese under the Fiduciaries Act of June 7, 1917, P. L. 447 (20 PS §321 et seq.). Section 59 (j) 8 (20 PS §1050) of this act provides: "Every such guardian, unless previously discharged or removed, shall, on the arrival of his ward at full age, file in the register's office a full and complete account of his management of the minor's property under his care, including all the matters embraced in each partial account; except where an examination or audit, and final decree of confirmation, has taken place

as hereinbefore provided, in which case said final account shall include only such matters as were not included in such former accounts and decrees aforesaid. And the decree of the orphans' court upon such final account shall, like other decrees of the court, be conclusive upon all parties, unless reversed, modified, or altered on appeal." This section is the same as part of section 10 of the Act of March 29, 1832, P. L. 191, 1 Purdon 1086, as amended by the Act of June 9, 1911, P. L. 744, 5 Purdon 5887.

It is the plain intent and purpose of this section of the Fiduciaries Act that a statutory guardian shall, unless previously discharged or removed, on arrival of his ward at full age, file in the register's office a full and complete account of his management of the minor's property under his care. This provision is not discretionary; it is mandatory. Walls' Appeal, 104 Pa. 14; Dushole's Estate, 71 Pitts. L. J. 433. When the ward attained his majority it was the duty of the guardian to render its final account and obtain its discharge, unless the parties entered into other legal arrangements. It has frequently been held that, where a ward makes a settlement with his guardian, after becoming of age, he cannot later compel the guardian to account in the absence of a showing of mistake or fraud in the settlement. See Alexander's Estate, 156 Pa. 368, 27 A. 18; Note L. R. A. 1916E, 867; Roth's Estate, 150 Pa. 261, 24 A. 685; Marr's Appeal, 78 Pa. 66; Ex parte Cress, 2 Wharton 494. However, informal settlements out of court by guardians with their wards, when they become of age, are not to be encouraged. Lukens's Appeal, 7 W. & S. 48. There was no settlement of any kind between the parties to this action; hence the duty was on the appellant to make an accounting and settlement, and not on the ward to first demand such accounting and settlement. Certainly, if the guardian

fails to comply with the provisions of the act, the ward may, upon arriving at majority, require the filing of a final account and settlement. See Alexander's Estate, supra; Ex parte Cress, supra; Walls' Appeal, supra.

In the case before us, the testimony shows that the guardian never filed any account until four years after the ward became of age; that the ward did not know of his estate in the possession of the guardian until about three weeks after it filed its first and final account on November 2, 1934; that the trust funds were invested in a mortgage pool; that the guardian could have settled in cash with the ward at the time he became of age, or at any time prior to July 17, 1933; that after July 17, 1933, cash settlement could not be made because of the action of the Orphans' Court of Allegheny County relative to investments of trust funds in general mortgage pools; that the interest received was added to the corpus of the estate and invested in the mortgage pool from time to time; and that the account of the guardian showed for distribution a mortgage pool certificate of $1,455, and cash in the amount of $30.60, being the balance in the hands of the accountant.

Under the circumstances, it was the right of the ward to refuse to accept in settlement a mortgage pool certificate from his guardian, the appellant. A guardian of the estate of a minor cannot properly retain investments, although legal in character, without the consent of the ward, for nearly four years beyond the time when the ward reaches his majority and the guardian should have settled with him, and then require the ward to accept such securities under conditions materially different from what they were when he was entitled to an accounting and a settlement. Consent to the guardian's acts after its ward becomes of age cannot be implied from failure alone of the ward to cite his guardian to account; but the conditions about which the ward complains must not be the result of his own unwarrantable

negligence in not taking appropriate and timely action to protect his own estate. See Gress' Appeal, 14 Pa. 463; Bones's Appeal, 27 Pa. 492; Maulfair's Appeal, 110 Pa. 402, 2 A. 530.

There is no statutory authority for such a guardian, as the appellant, to carry on the administration of the ward's estate, after he became of age, without his consent. When the ward arrives at the age of twenty-one years, the duties and powers of the guardian cease, except to file its account, make settlement, and obtain its discharge. A guardian cannot go beyond the line of its duty described by law.

We find no reason for the appellant's disregarding the plain provision of the act which requires a guardian to account on the arrival of the ward at full age. This duty of the guardian is not new. Blackstone recognized this obligation of the guardian to his ward when he said: "The power and reciprocal duty of a guardian and ward are the same, pro tempore, as that of a father and child; and therefore I shall not repeat them, but shall only add, that the guardian, when the ward comes of age, is bound to give him an account of all that he has transacted on his behalf, and must answer for all losses by his wilful default and negligence": Sharswood's Blackstone's Commentaries, vol. 1, p. 369, §462.

No necessity has been shown for the retention of the investment of the ward's funds in a mortgage pool for nearly four years beyond the time when the ward was entitled to a settlement and the law required a full and complete accounting on the part of the appellant. It is no answer to say that it has been the practice of trust companies in Pittsburgh not to file an account as guardian until requested to do so; nor is it any answer to say that the ward failed to demand an accounting and distribution, and that such failure should be held to be a waiver of his right to complain of the delay of the appellant in filing its account. No such duty devolved

upon the ward in this case; and any such practice of trust companies acting as guardians is contrary to section 59 (j) 8 of the Fiduciaries Act of 1917. The ward is entitled now to that which he was entitled when he became of age, or within a reasonable time thereafter; and he has the right to demand from the appellant that which the appellant admits it could have given him at the time of his majority, or at any time for nearly three years thereafter. The present plight of the appellant is the result of its own neglect and failure to perform its duty as defined by statute; and we will not hold the ward responsible for the obligations imposed upon the appellant. The ward had the right to decline to accept distribution in kind offered in settlement, and to demand cash, which he could and would have received from the appellant if the appellant had adhered to its legal duty.

Distribution of estates in kind is the exception, and not the rule. "The requirements of the law are not met when an accountant, whether administrator, guardian or trustee, proposes to hand over to those entitled to the estate specific property, however acquired, in liquidation of his liability, except as the parties in interest agree to an acceptance of the same": Weir's Estate, 251 Pa. 499, 503, 96 A. 1086, 1087. See Simpson's Estate, 253 Pa. 217, 223, 98 A. 35, 37. The court may, however, for reasons satisfactory to it, direct distribution in kind. This power is conferred by the provisions of section 49 (e) 1 of the Fiduciaries Act of June 7, 1917, P. L. 447 (20 PS §865): "Whenever it shall appear, at the audit and distribution of an estate in the orphans' court, that the balance, after payment of debts, includes stocks, bonds, or other securities, which, for reasons satisfactory to said court, have not been converted by the accountants, it shall be lawful for said court to direct distribution of such assets in kind, to and among those lawfully entitled thereto, including fiduciaries."

See Dempster's Estate, 308 Pa. 153, 162 A. 447; Komara's Estate, 311 Pa. 135, 166 A. 577.

We are of the opinion that the appellant has presented no satisfactory explanatory circumstances to warrant shifting to its ward the result of its own inattention.

The assignments of error are overruled.

There remains for our consideration appellee's claim that he is entitled to interest at 6% on the fund from December 9, 1930, the date when he became of age.

The investment in this case, although retained by the appellant beyond the time when it should have accounted, was, we assume, a legal investment for trust funds (it not having been shown otherwise), and no surcharge for the legal rate of interest can be made upon the basis that the investment was in non-legal securities.

There is no evidence that the investment was improperly managed, although retained beyond the statutory period of guardianship; hence the appellant cannot be surcharged with interest on the ground that it was grossly negligent in the manner in which it invested or handled the fund.

The appellant was remiss in that it failed to account at the ward's majority, and continued the administration of the estate for four years thereafter without the ward's consent. All that can be required of the appellant, in consequence of its violation of its statutory duty, is to place the ward's estate in the same position in which it would have been had the account been filed and settlement made with him when he reached his majority. There is no evidence to show that, if the ward had received the fund in cash at his majority, it would have earned any greater amount of interest than it did in the hands of the appellant. We find no evidence that the ward suffered any pecuniary loss, or that the appellant did not act in good faith. We, therefore, are of the

opinion that there is no reason or equitable basis for modifying the court's decree and charging the appellant with interest at 6% from December 9, 1930, rather than with the amount of interest actually received.

The decree of the court below is affirmed, at the cost of the appellant.

Judge STADTFELD took no part in the consideration or decision of this case.