## Warwick's Estate

*Larzelere & Wright,* for accountant.

HOLLAND, P. J., October 25, 1939.—The account was filed on July 20, 1939, in the office of the register of wills, and was advertised and transmitted to this court. It appeared on the September 1939 audit list, no. 116, but,

for reasons appearing below, it was not, however, audited when that list was called for audit.

On September 21, 1939, a petition was filed by Tradesmens National Bank & Trust Company, in its capacity as one of the substituted guardians of the minor's estate. The petition recites that Granville B. Hopkins, the original and sole guardian, died on December 7, 1938; that on March 29, 1939, Tradesmens National Bank and Trust Company and Helen Hancock Hopkins were appointed substituted guardians; that the account above mentioned was filed "in the office of the clerk of orphans' court" by the executor of the deceased guardian; and requests leave to have the account examined, audited, and confirmed.

This case illustrates the dilemma as to accounting procedure to be followed where, as here, a guardian dies during the minority of his ward. The same dilemma likewise exists where a guardian wishes to resign during the minority of his ward and where the minor dies during minority. In each case the guardian, or the personal representative of the deceased guardian, seeks discharge. That is the object to be accomplished, but which cannot be attained unless the guardian's accounts are settled first. By just what method is that end to be gained? The Fiduciaries Act of June 7, 1917, P. L. 447, is at once the source of the procedure and of the confusion which prevails.

Section 52 (a) of the Fiduciaries Act, supra, is applicable to the discharge of fiduciaries in general. Orphans' courts are authorized to discharge fiduciaries on petition, if their accounts have been "settled and confirmed", and if the property in their hands has been transferred to those entitled. A proviso, applicable to guardians seeking discharge during the ward's minority, requires the court to appoint a "suitable person to appear and act for the ward." Nothing in that clause or in section 11 of the Act of March 29, 1832, P. L. 190, from which it was taken, elucidates the accounting procedure.

Section 52(*b*) applies to the discharge of joint fiduciaries who have died, etc., but likewise contains no reference to accounting procedure.

The eight paragraphs of section 59(*j*) of the Fiduciaries Act all do apply to the subject of accounting by guardians, and comprise all the existing statutory provisions thereon.

Paragraph (*j*) 1 of section 59 requires guardians to file accounts "at least once in every three years, and at any other time when so required by the court . . . for the information of the court and the inspection of all parties concerned." Such accounts are to be filed in the office of the *clerk of the orphans' court.* This paragraph was taken from the Act of 1832, supra, sec. 10, as originally enacted, having been theretofore in the Act of March 30, 1821, P. L. 153.

Paragraph 2 authorizes the guardian or minor's next friend, after such an account has been filed, to petition the court for leave to have the account "audited and confirmed, with the same force and effect as executors' . . . accounts . . .". Paragraphs 3 to 7, inclusive, go on to provide, in connection with such petitions, for the contents of the petition; notice thereof to be given; the procedure to appoint a guardian ad litem and audit the account; the fixing and allowance of fees and costs; and appeals and rehearings. Paragraphs 2 to 7, inclusive, were also taken from the Act of 1832, sec. 10, but from that act as amended by the Act of June 9, 1911, P. L. 744. Until the amendment of 1911, there was no statutory authority for the final and conclusive confirmation of triennial accounts.

Lastly, paragraph 8 of section 59(*j*) requires every guardian, on the arrival of his ward of full age, and "unless previously discharged or removed," to file a complete account including everything embraced in triennial accounts which have not been audited and confirmed. Such

accounts are directed to be filed in the office of the *register of wills*.

So much for the statutory provisions. As to accounting, the procedure is clear and free from doubt in two cases: (1) Triennial, or partial, accounts must be filed with the *clerk of the orphans' court*. Without further action, they will rest there for information only. Upon petition, they may be audited and confirmed like any other fiduciary's account. (2) Final accounts filed *after the ward becomes of age* must be lodged with the *register of wills*, and will be advertised by him and transmitted to the court for audit and confirmation like any executor's or administrator's account. But what of cases in between these two? The legislature must have contemplated the possibility that a guardian might die or desire to resign during the ward's minority, as evidenced by the language of section 52 (*a*) and (*b*), and section 59 (*j*) 8; and also that a minor having a guardian of the estate might die during minority, as evidenced by the Act of June 12, 1931, P. L. 556; yet no such eventuality is expressly covered.

The result is that accounts in these cases are sometimes filed with the clerk, sometimes with the register. Being in fact "final" accounts, they are of course properly designated as such, but usually without explanation that, although a final account, the ward is still a minor. If filed with the clerk, he is misled into belief that it should be filed with the register, and will refuse to accept it. If filed with the register, he automatically advertises it and transmits it to the court for audit and confirmation along with the executors' and administrators' accounts. That was done in this case. Meanwhile the guardian and counsel, believing the procedure should be under section 59 (*j*) 2-7, have expected that no action would be taken on the account until a petition was presented to have the account audited, a guardian ad litem appointed, and the guardian discharged. Before they get to that point, the account appears on the audit list. Then the dilemma extends to the court. Shall audit and confirmation be refused, be-

cause it is prematurely on the audit list, or shall it be simply continued, until the petition is presented? If the petition is presented, may it be considered nunc pro tunc and the audit proceeded with, or must the account be readvertised? What of the ward's representative: shall it be a "suitable person", appointed under section 52 (a) ; or a "guardian ad litem", appointed under section 59 (j) 5? Must notice have been given to the ward's next of kin as provided in section 59 (j) 4?

A diligent search for reported authorities discloses no previous consideration or solution of the problem. Only two cases are even close to it. In Peters' Estate, 73 Pa. Superior Ct. 530 (1920), a guardian filed a purported first and final account in the register's office. Somehow the account was audited and confirmed by the orphans' court. After becoming of age, the ward petitioned for review. The petition was refused on the grounds that the account must be regarded merely as a partial account, notwithstanding its apparent confirmation, and hence there was nothing to review. There is no discussion of accounting procedure in the opinion. In Walls' Appeal, 104 Pa. 14 (1883), it is said (p. 18) :

"Upon the removal or discharge of the guardian, however, or on the arrival of the ward at full age, the guardian 'must settle, *in the Register's office,* a full and complete account . . .' " (quoting Act of 1832). It must be remembered that the procedure authorizing the audit and final confirmation of partial accounts, which is now contained in section 59 (j) 1-7 of the Fiduciaries Act, was not part of the predecessor Act of 1832, P. L. 190, sec. 10, until added by the amendment of 1911. Consequently, the dictum of Walls' Appeal can have no application. The conflict in methods of procedure did not exist at that time.

The only completely satisfactory solution can be by amendment to the Fiduciaries Act of 1917, sec. 52 (a) and (b), and section 59 (j), to cover the procedure in such cases by express provisions. Unless and until the problem

is thus clarified, it will persist, and some interim method of procedure should be established, even though it be done rather arbitrarily. The safest course to follow meanwhile appears to be that provided by section 59 (*j*) 1-7. While the accounts in the cases under consideration are final accounts, and thus more like the final account whose filing is controlled by section 59 (*j*) 8, there is a point of considerable difference in that here the ward is still a minor. Hence the procedure cannot be as simple as that under section 59 (*j*) 8, where the ward is of age and the sole party in interest. Here the minor must be represented by a guardian ad litem, and the minor's next of kin are still parties in interest. For these reasons the procedure provided by statute for the auditing and confirming of partial accounts during the ward's minority is deemed more applicable.

It was after considering this problem in connection with the recent revision of the rules of this court that rule 20, sec. 5, was adopted. This provides that where a guardian seeks to be discharged during the minority of his ward, the final account shall be filed with the clerk, and the requirements of section 59 (*j*) shall be observed; and further, that one petition may combine applications for leave to have the account audited and confirmed, and for the discharge of the guardian.

For the guidance of all concerned, we state the following outline for accounting procedure in all cases of final accounts of guardians where the wards have not yet arrived at full age (whether the guardian or the ward has died, or whether the guardian is still living but wishes to retire from his trust), and where the guardian, or the estate of a deceased guardian, is to be discharged:

1. The account, in addition to being designated a "final" account, shall contain in the caption a brief explanation that the ward is still a minor. This, so as to avoid confusing such an account with the more usual final guardian's account filed after the ward has arrived at full age.

2. The account shall be filed in the office of the clerk of this court, and not in the office of the register of wills.

3. The clerk, after the account has been filed, shall hold the same without further action until ordered by the court, upon application by petition under the Fiduciaries Act, sec. 59 (*j*) 2-7, for leave to have the account audited and confirmed. After the entry of such an order by the court, the clerk shall advertise the account and include it upon the appropriate audit list.

4. After the account has been filed with the clerk, a petition shall be filed as provided in the Fiduciaries Act, sec. 59 (*j*) 2-3, requesting: (*a*) Leave to have the account audited and confirmed; (*b*) the appointment of a guardian ad litem for the ward (if still living) ; and (*c*) the discharge of the guardian or of his estate. The preliminary decree attached to the petition shall be drawn so as to include: (*a*) Granting leave to have the account audited; (*b*) directions to the clerk to advertise the account and to place it on the next audit list; (*c*) directions as to notice to be given to the minor, the minor's next of kin, etc. (see Fiduciaries Act, sec. 59 (*j*) 4) , due proof of service of such notice to be presented at the audit of the account; and (*d*) the appointment of a guardian ad litem for the minor, if still living.

5. After the audit and confirmation of the account, and after the adjudication thereon shall have been confirmed absolutely, a final decree of discharge of the guardian may be submitted as provided in rule 20, sec. 3 (*c*).

Another respect in which section 59 (*j*) of the Fiduciaries Act is confusing, is in apparently requiring two separate preliminary orders of court. Paragraph 4 of that clause seems to contemplate, after filing the petition for leave to have the account audited and confirmed, the entry of an order directing the giving of notice. Paragraph 5 of the same clause then apparently contemplates that after proof of service of notice as first directed, and after consideration of the necessity for audit of the account, a further—although still interlocutory—order be

entered appointing a guardian ad litem and directing examination of the account by the guardian or audit by the court. While the procedure outlined above in this opinion represents departure to a certain extent from what thus seems to be contemplated by the statute, as it combines both preliminary decrees in one, it is believed to be without substantial objection.

Returning to the specific account before the court: For the reasons and in accordance with the procedure now established, the account cannot be audited. It was erroneously filed with the register instead of with the clerk. It was prematurely advertised and listed for audit, without it having been ordered advertised and listed for audit upon petition, without notice to the minor, the minor's next of kin or nearest relatives, and without the appointment of a guardian ad litem. The account must be returned to the clerk, unaudited and unconfirmed.

The next question in this particular case, is whether the executor of the deceased guardian shall restate his account and refile it, this time with the clerk, or whether such circuity and useless duplication of effort may be avoided in this one instance. Meanwhile, a petition under section 59 ($j$) 2 of the Fiduciaries Act has actually been filed and is before the court for action. We are of the opinion that it will suffice here for the clerk to hold this account; and for the court to enter a preliminary decree on the petition directing the clerk to readvertise the account and place it on the next audit list, directing petitioner to give notice of the account and petition to the minor and next of kin, and appointing a guardian ad litem. The only technical defect will be that the account was not originally filed with the clerk. This we deem of no import, as the account will of necessity rest in the clerk's office during the four-week advertising period, and will be just as available for inspection by parties in interest as though originally filed there. The futility of making this inconsequential imperfection the basis for compelling the preparation and filing of a duplicate ac-

count, and for interring the original document forever among the records, is obvious.

And now, October 25, 1939, audit of the first and final account of Granville B. Hopkins, guardian of the estate of Katharine Warwick, minor, as stated by Tradesmens National Bank & Trust Company, executor of the will of Granville B. Hopkins, deceased, is refused, and the account is returned to the clerk, unaudited and unconfirmed, to be held by the clerk until further order in respect thereto.